CATLIN, PEEPLES & CO. V. GILDERS, EX'R & EX'RX.

1. Upon the margin of the judgment entry, the suit was stated against the defendants in the firm name ; the process had been served on one of the defendants, and he only pleaded ; the judgment recites that the parties came by their attornies, and the jury were empannelled to try the issue joined—*Held*, that the reasonable inference is, that they only appeared who were parties to the issue tried.

2. Where, in an action on a promissory note, the defendant, by his plea, puts in issue the making of the note, if it is correctly described in the declaration, it should be permitted to be read to the jury, without any additional · evidence that the plaintiff may offer proof of its genuineness, and to show that it is the defendant's act.

3. One of the partners of a firm, when sued upon a promissory note made in the name of the concern, after its dissolution, by another of the late partners, can not, for the purpose of showing that it was not made by his authority, give evidence of what he had said in regard to other notes, made under similar circumstances.

4. It is competent for partners, upon the dissolution of their partnership, to invest each other, or any one of their number, with authority to borrow money, and make notes upon their joint account, in order to pay the debts of the firm ; and where such an authority is conferred, the statement of one of them, upon obtaining a loan of money, that it was to be applied in payment of a firm debt, is evidence against the others.

5. The extent to which partners may pledge the responsibility of each other, is not to be determined from the articles of partnership under which they associated, but from the character of their dealings, and the manner in which they hold themselves out to the world.

6. The Court may, with propriety, refuse to permit a defendant, who has offered evidence to the jury, to withdraw the same, and demur to that adduced by the plaintiff.

7. It is not necessary, to entitle the plaintiff to recover, that the proof in his favor should be conclusive ; but if the evidence establishes *prima facie*, a good cause of action, it is quite sufficient.

8. Under the common count, upon an account stated, a promissory note is admissible evidence, without any proof of its consideration.

THE testator of the defendants in error, brought an action of assumpsit, in the Circuit Court of Tallapoosa, against the plaintiffs, on a promissory note, of which the following is a copy. "Six months after date, we, or either of us, promise to pay Sinnort Gilder or bearer, the sum of one thousand dollars, for value received, this 14th day of March, 1837.

CATLIN, PEEPLES & CO."

The writ was executed on Peeples only, but the plaintiff de-

clared against him, together with Henry Catlin and John D. Saunders, as surviving partners of Joseph C. Heard. Peeples alone pleaded,

1. That the note was not made by him, nor by any one authorised by him.

2. That he was not a member of the firm of Catlin, Peeples & Co. at the time the note was made, and that it is not his act.

3. *Non assumpsit.*

All of which pleas are verified by affidavit.

Pending the suit, Gilder died, and it was revived in the name of his executor and executrix, and tried by a jury, who returned a verdict in favor of the plaintiffs.

On the trial, the defendant excepted to the ruling of the presiding Judge. From the bill of exceptions, it appears that a witness, offered by the plaintiffs, testified that the note in suit, was signed by Henry Catlin; that Catlin and Peeples, and perhaps other members of the firm, informed him, that the firm was composed of Henry Catlin, Rufus D. Peeples, (the defendant) John D. Saunders and Joseph C. Heard. That this information was given him in 1835, and that he afterwards understood Heard was dead, but when he died, or when the firm was dissolved, witness could not state; and further, that it was an ordinary mercantile concern, dealing in goods, wares and merchandize. Upon this evidence, the plaintiffs offered to read the note to the jury, when the defendant offered a witness to prove, that Heard died before the date of the note, but the Court rejected the evidence, stating that it would be competent for the defendant to offer the witness after the plaintiffs had gone through with their evidence; and that plaintiffs might read their note to the jury. Thereupon the defendant excepted, &c.

The defendant then proved that Joseph C. Heard died about the 15th February, 1837, and offered to prove that Henry Catlin, after the death of Heard, executed new notes in the name of Catlin, Peeples & Co. which notes Peeples had refused to recognize, or pay; to the proof of this latter fact of disaffirmance on the part of Peeples, the plaintiffs objected, and their objection was sustained. Thereupon the defendant excepted, &c.

The defendant having closed his evidence, the plaintiffs introduced a witness, who stated, that Peeples informed him in June, 1837, that the firm of Catlin, Peeples & Co. was dissolv-

ed, as to making new contracts, but the survivors had the right to use the firm name to borrow money to settle old debts, and to settle up its old debts; and that he expected the money Catlin had borrowed from the witness, was obtained for that purpose. The witness further stated, that the plaintiff's testator resided in the neighborhood of the place, where the firm had carried on their mercantile business. To the introduction of this proof, as to the borrowing of money, the making a note to the witness therefor, and the statements of Peeples, the defendant objected; but his objection was overruled; and thereupon he excepted, &c.

The plaintiffs introduced another witness, who testified, that between the 20th of January and the first of February, 1837, he was informed by Henry Catlin, that he had made a contract with one Edwards, a hog-drover, on behalf of the firm of Catlin, Peeples & Co. for the purchase of a number of pork hogs. Witness resided where the firm had done business; and was employed by Catlin to pickle the pork for the firm. Witness, under a written order from Catlin, sold some of the pork for the firm, and in addition, made other sales on behalf of the firm.; the remainder of the pork, together with the goods of Catlin, Peeples & Co. on hand, were sold at auction in June, 1837, in the presence of Peeples. The note in suit, was given for money borrowed of Gilder, by Catlin, at or about the time of the loan, the latter stating it was to pay for the pork purchased as aforesaid. The witness further stated, that the firm dealt in dry goods and groceries, traded with the Indians, and were in the habit of trading in any thing on which they could make money; but did not buy lands nor mules, nor did he know of any pork having been purchased by them, except as already stated.— That Catlin, Heard and Saunders were the active co-partners in the firm; that Peeples resided some miles distant, and was not actively engaged in the concern; that he does not know whether the defendant knew any thing about the purchase of the pork, the borrowing of the money, or giving of the note; nor does he know that Peeples ever derived any benefit from the sale of the pork. The pork was purchased before the death of Heard, but the money was borrowed, and the note made after that event. The defendant objected to the evidence as to the purchase of the pork, the borrowing of the money, and the

declarations of Catlin at the time it was borrowed, as to the manner in which it was to be appropriated; it not appearing that Peeples was privy thereto; but the Court overruled the objection, remarking that the plaintiffs had laid a predicate for such evidence, by proving the admission of Peeples, that the survivors had authority to use the firm name to settle its old debts. Thereupon, the defendant excepted, &c.

The plaintiff then introduced another witness, who testified, that in the spring of 1838, she heard a conversation between Saunders and the defendant, in which the former remarked, that he had just received a dun for money due from the firm to old Mr. Catlin, of Wetumpka, and that there was a debt due to old Mr Gilder, for money borrowed, when it could be obtained no where else; that old Mr Gilder was an honest man, and ought to be paid. In reply, the defendant said, " we must do the best we can—it ought to be paid." Here the plaintiff closed his evidence.

The defendant then offered the original articles of co-partnership, by which Catlin, Peeples & Co. became associated in business, and proposed to prove their execution by the subscribing witness; these articles provided for dealing in merchandize, at a place therein designated: he proposed further to show, by proof *aliunde*, that the purchase of pork by any member of the firm, was without the scope of the partnership dealings. All which was rejected, on the ground that the testimony last adduced, was rebutting evidence, in answer to that previously offered by the defendant, and according to the practice of the Court, the introduction of additional proof, was not permissible. Thereupon, the defendant excepted, &c.

The defendant then proposed to withdraw from the jury, the evidence offered by him, and to demur to the plaintiffs evidence, but the Court decided that the plaintiff at this stage of the proceeding, could not be compelled to join in a demurrer—that the defendant could not withdraw his evidence; and the Court would not allow him to do so. And thereupon, the defendant excepted.

The defendant then prayed the Court to instruct the jury,

1. That having denied, on oath, the making of the note in suit, it was incumbent on the plaintiffs to prove his liability, and on failure of such proof, the jury should find for the defen-

dant on the first count, which charge the Court gave with this qualification, that it was necessary for the' plaintiffs to make out a *prima facie* case.

2. That the death of one of the partners put an end to the partnership, and if the jury believed from the evidence, that the note mentioned in the first count was executed after the death of one of the firm, without the consent of the defendant, he is not liable' thereon; which charge the Court gave, with this qualification, that if the surviving partners consented to the giving of such a note, or had subsequently ratified, or recognized the act, they should find for the plaintiffs ; for in such case, the note would be good against the survivors, and void as to the representatives of the deceased partner.

3. That if there was no other consideration than such as was liquidated and settled by the giving of the note in controversy, the plaintiffs must recover on the note, or not at all, unless he has offered to cancel or return it; which charge the Court refused to give, but instructed the jury, that the plaintiffs might give the note in evidence, under the common counts, and recover upon them.

4. That to make the defendant liable for a contract made by Catlin for the purchase of hogs, it was necessary that the plaintiffs should show that the purchase of such stock came within the scope of the partnership dealings of the late firm of Catlin, Peeples & Co. or that it was assented to, by the defendant; which charge the Court refused to give as prayed; but charged, that if the plaintiffs had proved a general partnership, the jury might presume the purchase of hogs was embraced, and if such a partnership had been proved, it was incumbent on the defendant to show, that the purchase of hogs did not come within the scope of its dealings. To the refusal of the Court to charge the jury as prayed, and to the charges given, the defendant, excepted, &c. And judgment was rendered in favor of the plaintiffs against the defendants. The judgment entry recites, that the parties came by their attornies, and this is the only evidence in the record of the appearance of the defendants not served with process. From the judgment of the Circuit Court, a writ of error is prosecuted to this Court.

BAYLOR, for the plaintiff in error, insisted that the partner-

ship of Catlin; Peeples & Co. was dissolved by the death of Heard, and that the note in suit being made by Catlin, imposed no liability upon the defendant, Peeples; that the evidence adduced to show his assent to the making of the note, and that he derived a benefit from it, was too indirect and indefinite to authorise its admission.

Again, a judgment is rendered against all the parties declared against, though Peeples only was served with process, and appeared. Such a judgment cannot be sustained.

The charges of the Court are not free from objection; and the fourth charge prayed, should have been given. It merely affirms the familiar principle, that a partnership, cannot be bound by the act of one of its members, not within the scope of its dealings.

HARRIS, for the defendant. The judgment shows that the parties came by their attornies, and the presumption is, that all who are declared against, appeared.

The note being made in the partnership name, it will be intended that it was given for a partnership debt. Chitty on Bills, 617; Vallett v. Parker, 6 Wend. Rep. 619.

The admissibility of evidence is to be determined by the Court, its sufficiency by the jury. Clifton v. Grayson, 2 Stewt. Rep. 412; Bell v. Rhea, Conner & Co. 1 Ala. Rep. N. S. 85.

The admission of the defendant's testimony after the plaintiffs had closed their rebutting evidence, was a matter within the discretion of the Court, and consequently, not revisable.— James, *et al.* v. Tait, *et al.* 8 Porter's Rep. 476; Towns v. Riddle, 1 Ala. Rep. N. S. 694; 2 Phillips' Ev. C. & H.'s notes, 712, 717.

The Circuit Court properly refused to compel the plaintiffs to join in a demurrer to the evidence. Alexander v. Fitzpatrick, 4 Porter's Rep. 405.

The note was evidence under the money counts. Hightower v. Ivey, 2 Porter's Rep. 308; Hunley v. Willis, Lang & Co. 5 ibid. 154; Gillespie, *et al.* v. Wesson, 7 ibid. 454.

The admissions of a partner, though not a party to the suit, is evidence as to joint contracts against any other partner, as well after the determination as during the existence of the partnership. Chitty on Bills, 617.

COLLIER, C. J.—In Gilbert, *et al.* v. Lane, 3 Porter's Rep. 267, the writ issued against several defendants, but was executed upon one only. In the margin of the judgment entry, the names of all the defendants were stated at length, and the judgment recited that the defendants came by their attorney, and say nothing in bar of the plaintiff's action, &c. The Court held that, "the names of all the defendants on the margin of the entry, and the statement in the entry, that the defendants appeared by their attorney, show clearly that the three defendants all appeared in the suit." That case is clearly distinguishable from the case at bar; here, but one of the defendants pleaded, so that as to him only, the case could regularly have been submitted to the jury ; and when it is said that the parties came by their attornies, the reasonable inference is, that they only came, who had made up an issue to be tried by the jury. Had the defendants who had not appeared and pleaded, have attempted to litigate the facts, the Court would doubtless have denied to them the right to do so, if objected to by the plaintiffs, because they had not interposed in a legal form, a denial of the plaintiffs cause of action. This reasoning is not opposed by any thing appearing in the record. The names of the defendants are not set out at length in the margin of the judgment; they are styled as Catlin, Peeples & Co. and the recital in the entry, is not that the defendants came, &c. but that the parties came by their attornies, and that the jury were empannelled "to try the issue joined," thus excluding the presumption, that the liability of the defendants who were not parties to the issue, were to be determined by the jury. Nor does the verdict assume to charge the defendants; it is a mere finding of the issue in favor of the plaintiffs, and an assessment of their damages; but it is the judgment consequent upon the verdict, which determines they are liable. From what we have said, it follows that the judgment of the Circuit Court is erroneous in having been rendered against defendants, who had neither been served with process nor appeared.

We might here close this opinion, but as other questions of law are raised upon the record, and have been discussed at the bar, it is proper to consider them, that a guide may be furnished for the ulterior action of the Court below.

In respect to the admissibility of the note on which the ac-

tion was brought, there was no necessity for proving it to have been made by the parties declared against, or either of them, before reading it to the jury as evidence; if it was correctly described in the declaration, the defendant could not be allowed to insist before the Court, that it should be excluded from the jury, because it was not his act. The parties had already joined issue upon that point, and agreed to refer to the jury the examination of the facts, and the first step in the trial, was the production of the note; for until that was before the jury, the plaintiffs could not have introduced their evidence to disprove the defendant's plea. A question very similar in principle, was raised in the case of Bell v. Rhea, Conner & Co. 1 Ala. Rep. N. S. 83. In that case, it appeared that the defendants in error declared on a promissory note, payable to them, by the name of Rhea, Conner & Co. under the plea of *non assumpsit*, it was objected in the Court below, that the note was not admissible evidence, until the plaintiffs proved that they were the individuals composing the firm, to whom the note was payable, but the objection was overruled, and the question here made, was, whether the note had been properly admitted. This Court say, " the note was properly described in the declaration, and clearly tended to prove a very material part of the plaintiffs case; it was the first and indispensable link in the chain of evidence, which was to establish his case; and being excluded, no matter how just his demand, he could not have recovered." Further, " the true rule seems to be where the evidence is unobjectionable in itself, and tends to prove a material fact in issue, it should be allowed to go the jury, who are the proper judges of the effect to be given to it. No inconvenience can result from this rule, in practice, since the Court can always instruct the jury as to the sufficiency of evidence." To the same effect is Emerson and another v. The Providence Hat Man. Co. 12 Mass. Rep. 237, 244. These cases are conclusive to show, that the Circuit Court very properly rejected the evidence, by which the defendant proposed to show *to the Court* that the note declared on, was not made by him, or his authority; and that the permission of the plaintiffs to place it before the jury, even without additional evidence, would have been regular.

As a general rule, a party cannot give evidence of his decla-

rations for the purpose of establishing a demand in his favor, or to resist a recovery against himself. The application of this principle, to the offer of the defendant to prove that he had refused to recognize or pay some notes made by Catlin, in the name of Catlin, Peeples & Co. after the death of Heard, shows that such evidence was inadmissible.

Although the death of Heard, *ipso facto*, dissolved the partnership of Catlin, Peeples & Co, yet it was competent for the survivors to invest each other, or any one of their number, with authority to borrow money, and make notes upon their joint account, in order to pay the debts of the firm. And it was permissable for the plaintiffs to show that the defendant recognized the authority of the other surviving partners, thus to pledge his responsibility, by proof of his admissions or declarations to that effect. If the survivors conferred such an authority upon each other, the statement of one of them upon obtaining a loan of money, that it was to be applied in payment of the firm debts, would be evidence against the others. This is implied from the nature of the power granted, which makes each the agent of the other for a defined and specific purpose, but as it respects third persons who may lend money, they are agents for the purpose of borrowing generally; otherwise the lender for his own protection would be compelled to look to the application of the loan—an idea which cannot be tolerated.

The purpose for which a partnership was created, and the extent of the authority of the individual members, is not to be limited by the articles, under which their connection was formed, but is to be ascertained, rather from the character of their dealings, and the manner in which they hold themselves out to the world. In respect to the firm of Catlin, Peeples & Co. one witness says they dealt in dry goods and groceries, and were in the habit of trading in any thing on which they could make money. Taking this statement as literally true, and it cannot be questioned, that Catlin might, during the continuance of the partnership, have purchased hogs or other stock, on account of the firm. Conceding that the Court had no discretion as to admitting or rejecting the evidence offered after the plaintiffs had closed their testimony in answer to the defendant, yet from what we have said it is apparent that the defendant was not prejudiced by the exclusion of the articles of partnership—

these operated *inter partes,* but could not override the effect of their general course of dealing, so far as the plaintiffs were concerned.

The refusal of the Circuit Court to permit the defendant to withdraw from the jury, the evidence he had offered, and to demur to that adduced by the plaintiffs, was certainly correct. A party who has offered evidence to the jury, cannot be permitted to demur to the facts which his adversary has proved : Young v. Black, 7 Cranch's Rep. 565; Pawling, and others v. The United States, 4 Cranch's Rep. 219 ; Pharr & Beck v. Bachelor, at June Term, '41. And a Court could not, with a just respect for the administration of the laws, permit a party to speculate upon the chances of success, by first offering evidence to the jury, and then, when he has ascertained it to be unsafe to entrust his case to them, to ask leave to withdraw his evidence, that he may submit to the decision of the Court.

In regard to the charges prayed, and refused, or given to the jury, we will consider them in the order in which they are stated in the bill of exceptions. The Court gave the first, as asked, that is, it instructed the jury, that the plaintiffs must show the defendant's liability to pay the note sued on, qualifying the charge, with the remark, that the proof need not be conclusive, but that it was necessary for the plaintiffss to make out their case, by showing, *prima facie* a right to recover. The Court gave the second charge prayed, affirming that the death of Heard, operated a dissolution of the partnership of Catlin, Peeples, & Co. and that if the note in suit, was executed after such dissolution, without defendant's consent, he is not liable. But in addition, the Court say if the surviving partners consented to the giving of such note or ratified or recognized the act, they should find for the plaintiffs; for in such case the note would be good against the survivors, and void as to the representatives of the deceased partner. The correctness of the qualification of the first charge is too plain for argument, and the addition to the second, has, in the view taken of another part of the case, been shown to be in conformity to law.

The third charge asked, supposes, that a promissory note is not evidence under a count upon an account stated, but to entitle the plaintiffs to recover, under such a declaration, the consideration of the note must be shown. This charge was pro-

perly refused, and the note held to be sufficient evidence in itself. Authorities are ample to show, that the law requires no other evidence than the note itself: Chitty on Bills, 9 Am. ed. 596; Hunley v. Willis, Lang & Co. 5 Porter's Rep. 154; Gillaspie, et al. v. Wesson, 7 ibid 454.

But the fourth charge prayed, should have been given. It was a request of the Court to declare a well settled principle in the law of partnership, viz: that partners are not liable for each others acts, to a greater extent, than they appear by their general course of dealing to have authorised. Under the state of the pleadings, such an instruction was proper, and being so, the defendant was entitled to have it given, in the terms in which it was asked. If the Court supposed, that a charge thus general, was calculated to mislead, or embarrass the jury, its effect and meaning could have been explained. It is unnecessary to consider the last instruction given, for conceding it to have been correct, it can't cure the error of the refusal to charge as asked.

This view disposes of the case as presented, and the consequence is, the judgment is reversed, and the cause remanded.