## FORREST & LYON *vs.* CAMP.

1. The judgment of a court of record in this State for costs, under the act of 1812, (Clay's Dig. 205,) creates a lien on the lands of the defendant from the date of its rendition.

2. An irregularity in the entry of the levy on an execution cannot affect the title of the purchaser, and as evidence intended to explain it is immaterial and unnecessary, its admission, though erroneous, cannot avail as a ground of reversal.

3. Fraud pollutes public as well as private sales, and in an action of trespass to try titles, between parties claiming by purchase under execution against the same defendant, it is error to exclude evidence tending to show that the deed of the sheriff, upon which the plaintiff relies, was fraudulently obtained, and was intended to delay and hinder creditors.

Error to the Circuit Court of Jefferson. Tried before the Hon. Geo. D. Shortridge.

This was an action of trespass to try title to a lot and improvements in the town of Elyton, and was instituted by the defendant against the plaintiffs in error. The plaintiff below rested his title on a judgment for costs, rendered against one Jonathan Steele, on the 4th February 1840, in the County Court of Jefferson, an execution thereon, and a sale under it on the first Monday in June 1840, a deed from the sheriff to Jonathan B. Badger and Sylvester Steele, the purchasers at said sale, and a deed from them to him. The entry of the levy on the execution, not describing the premises accurately, the plaintiff introduced the sheriff as a witness and proved by him that the property levied on and intended by the description in the entry on the execution was the lot and improvements in controversy. To this evidence the defendants objected, but their objection was overruled by the court. The defendants relied upon the deed of the Marshal of the United States for the Middle District of Alabama, founded on a sale by him subsequently to the purchase by Badger and Sylvester Steele, under a judgment and execution against the said Jonathan Steele, and offered to prove that the purchase of the premises by Badger and Sylvester Steele was procured for the

purpose and with the intent to delay, hinder and defraud the creditors of Jonathan Steele, and that the deed from Badger and Sylvester Steele to the plaintiff was without consideration and voluntary, but the plaintiff objected to the testimony and the court sustained the objection. The defendants also, to show an outstanding title to the premises, gave in evidence a deed from said Jonathan Steele to one Flannagin, dated the 29th April 1840, by which the premises were conveyed in trust for the benefit of creditors. The defendants asked the court to charge the jury: 1st. That the said judgment for costs, under which the plaintiff claimed, did not create a lien on the real estate of Jonathan Steele, the defendant therein.— 2d. That if such judgment did create a lien, the lien could not attach until the costs were taxed, or the execution issued:— Both of which charges the court refused to give, but charged that the judgment created a lien from the date of its rendition. To the rulings of the court, to the refusal to charge as asked, and to the charge given, the defendants excepted and now assign them severally as error.

PECK, for plaintiffs in error:

1. It was incompetent to vary or explain the return of the sheriff on the execution by parol evidence. Clark v. Gary, 11 Ala. Rep. 98; Craft v. Dexter, 8 ib. 767; Mead et al. v. Figh & Blue, 4 ib. 279.

2. Sylvester Steele, being the grantor of Badger, was incompetent to prove the execution of the deed to Badger and from Badger to defendant. Although there is no actual covenant in the deed to Badger, nevertheless our statute makes the words grant, bargain and sell to operate as an express covenant to the grantee, his heirs and assigns, that the grantor is seized of an indefeasible estate in fee simple, &c. Clay's Dig. 156, § 31; Roebuck v. Dupuy, 2 Ala. Rep. 539; 1 Greenl. Ev. § 397, and note.

3. The evidence offered by plaintiff in error to prove that the purchase of the premises at the sheriff's sale by the said Sylvester Steele was made and procured for the purpose and with the intent to delay, hinder and defraud the creditors of Jonathan Steele, should have been admitted. A sheriff's sale is within the statute of frauds.—Jackson v. Catlin, 2 Johns.

Forrest & Lyon v. Camp.

Rep. 259; Ennis v. Waller, 3 Blackf. 472. A sale of lands under 'an execution, if the purchase is made for the purpose of hindering, delaying or defrauding creditors, is void as to all subsequent purchasers and prior creditors.—Duncan et ux v. Forsythe, 3 Dana, 229–231; Carter v. Castleberry, 5 Ala. Rep. 277–279.

4. So should the evidence have been admitted which was offered to prove that the deed from Badger to the defendant in error was made without consideration, and that the defendant purchased with a full knowledge of all the circumstances. The evidence offered and rejected would have shown that defendant was not a *bona fide* purchaser, but that his purchase was a mere collusion to defraud the plaintiffs in error.

5. A judgment for costs only *against a plaintiff* is no lien upon land; therefore, the charge given that it was is erroneous. We have no statute that directly declares a judgment, of any kind, a lien upon land. The lien, where it exists, is derived from the act that gives the writ *elegit.*—Burks' adm'r. v. Jones & Allen, 13 Ala. Rep. 170-1. An extent under our statute can only be made to pay the debt and damages.—See the Writ of Elegit and Return, Clay's Dig. 200-1. At the common law, there were no costs, but if the *plaintiff* did not prevail, he was *amerced for his false clamor.* The statute of Gloucester 6, Ed. I., first gave the *plaintiff* costs in certain cases.—Bac. Ab. vol. 2, a, 33. The costs, however, were *included in and recovered as a part of the damages;* and consequently, where there were no damages there could be no costs. Robert Pilford's case, 10 Coke 116; Phillips v. Bacon, 9 East. 298, 303.

EARNEST, for defendant:

There is no error in the record. In this case there are two prominent points, and upon them hang the decision of the cause :

1st. Is the judgment of Byars v. Steele such a judgment as binds real estate ?. The affirmative of this proposition is, I think, clearly settled by our statute.—See Clay's Dig. 199, § 1; ib. 205, § 17. The language is, all judgments and decrees, &c.—Morris v. Ellis, 4 Ala. Rep. 560.

2. Can a creditor of the defendant in execution contest a

sheriff's deed for fraud or irregularity? The negative of this is clearly settled, I think, in the case of Mobile Cotton Press Co. v. Moore & Magee, 9 Port. 679. On page 692, the court uses this language: "That a sale of land will be set aside (by motion to the court to which the execution is returnable) where the sheriff is guilty, &c., to the prejudice of either party or a third person." By third person is clearly meant a creditor; and if he neglects to apply to the proper forum and by the proper motion, he is as much estopped as the defendant in execution from alleging fraud. This decision and the construction here given is confirmed and approved by the train of subsequent decisions of this court.—See Ware v. Bradford, 2 Ala. Rep. 682; Hurbert v. McCollum.

DARGAN, C. J.—It is contended by the plaintiffs in error, that a judgment for cost alone, rendered in favor of a defendant against the plaintiff, does not create a lien on the land of the party against whom it is rendered. This question involves the construction of our statutes, subjecting land to the payment of judgments; for at common law the lands of a debtor could not be sold or in any manner made liable to the payment of debts. By the act of 1807, (Clay's Digest 199,) it is enacted, "that all persons, who shall recover any debt, damages or cost by the judgment of any court of record within this State, may at their election prosecute writs of *fieri facias, elegit,* or *capias ad satisfaciendum,* within the year, for taking the goods, lands, or body of the person or persons against whom such judgment is obtained." It is however contended, that a judgment for cost alone cannot create a lien on the land of the party against whom it is rendered, because this statute gives no other process against land, except the writ of *elegit,* the form of which is prescribed by the act, and allows the lands of the defendant to be extended for the debt and damages only, *but not for costs, eo nomine.* Besides, that under our practice, the plaintiff or the successful party is not entitled to receive the costs, as it is due to the officers of court and to the witnesses summoned in the cause, unless it is made to appear that he has actually paid such costs to those entitled to receive them; therefore, it could not have been the intention of the Legislature to put the plaintiff in possession of the land of the defend-

ant, under this process, to be held by him until the costs were paid or received from the rents and profits, as he might not be entitled to retain the costs thus realized.

I do not deem it necessary to determine whether a judgment for costs alone would create a lien on land, under the act of 1807, for it is very clear to my mind, that by the act of 1812 (Clay's Dig. 205) all judgments and decrees of courts of record in this State create a lien on the lands of the party against whom they are rendered. The language of the act is, "Hereafter lands, tenements, and hereditaments shall be subject to the payment of all judgments or decrees of any court of record within this State, and the clerk of such court shall frame the execution accordingly," &c. I know that our courts have usually ascribed the lien on land created by judgments of record to the act of 1807, which merely gives the writ of *elegit*, by which the lands of the debtor may be extended.— Morris v. Ellis, 3 Ala. 560; Campbell v. Spence, 4 ib. 543; Burke v. Jones et al. 13 ib. 167. But whether the act of 1812 does create a lien in favor of judgments, independent of the act of 1807, has never been determined by this court, so far as I have been able to discover, and the question for the first time is presented for adjudication.

The act of 1807 does not in express words give to judgments the effect of creating a lien on land. It merely gives the judgment creditor the right to sue out the writ of *elegit*, by which a moiety of the lands of which the defendant was seized at the time of the rendition of the judgment is liable to be extended in satisfaction of the judgment. This right has been construed into a lien on the land.—Morris v. Ellis, 3 Ala. 543. If the right to extend the land in satisfaction of the judgment is correctly construed as a lien upon it, I ask, why deny the lien to the right to sell absolutely? We perceive no reason why we should hold that a lien is created by one statute, but not by the other; both subject lands to the satisfaction of judgments—the act of 1807, by the process of *elegit*— the act of 1812, by a common *fieri facias*. In Maryland, there is no statute declaring that judgments shall create a lien on lands, but the act of 5th George II., subjecting lands to sale in payment of debts, in the same manner as chattels, is still in force in that State. This act of Parliament has been con-

strued as creating a lien on the lands of the defendant from the time of the rendition of the judgment.—Tayloe v. Thompson, 5 Peters, 358, and cases there cited.

We think both the acts of 1807 and 1812, before refered to, should be construed as creating a lien on the lands of the defendant from the time of the rendition of the judgment, and that the plaintiff may elect to enforce or execute his lien, either under the one or the other of those acts. As we have come to the conclusion that all judgments and decrees of courts of record create a lien on the lands of the party against whom they are rendered, by virtue of the act of 1812, there can be no doubt but that a judgment for costs alone will create a lien on the land of the party against whom it was rendered, for without doubt, under this act, the execution for cost may go against the goods and chattels, lands and tenements, in the same manner that an execution may issue on any other judgment or decree, and such a judgment must like any other create a lien on the land of the defendant from the time of its rendition. To say that it only created a lien from the time the cost was taxed by the clerk, would be to deny the lien to the judgment, which is the act of the court, and to refer it to the ministerial act of the clerk. The statute that creates the lien does not justify such a construction.

2. The return on the execution was not essential to enable the plaintiff to maintain his action; all that is necessary to enable a purchaser at sheriff sale to recover in ejectment is the judgment, execution and sheriff's deed. He cannot be affected by any irregularities of the sheriff, either in not giving the notice required, or in the return he may make on the execution.—Love & Williams v. Powell, 5 Ala. 58: In the case of Driver v. Spence, 1 Ala. 540, the purchaser to make out his title offered in evidence the execution under which the land was sold. This was objected to, on the ground that the levy endorsed on the writ did not correspond with the land described in the sheriff's deed. This court held, that the objection was properly overruled. These authorities we think hold the correct rule. The title of a purchaser who has purchased under a valid judgment and execution, and who has paid the purchase money, should not be made to depend on the return of the sheriff, or whether any return is ever made on the writ

or not.—Heath v. Black, 7 Blackford, 154; Henly v. Branch Bank of Mobile, at this term. From this view, it follows that it was unnecessary to read the endorsement on the execution, showing the levy, and consequently the evidence of the sheriff which was intended to explain it, was immaterial and unnecessary, for it could not affect the right of the plaintiff to recover. He acquired no aid from this testimony and could not be injured by its rejection. We could not therefore reverse the judgment for the admission of this evidence, even if we were to hold that parol proof could not be received to explain or vary the legal effect of a sheriff's return, unless upon a direct proceeding for the purpose of amending it.

3. But there can be no doubt, we think, that the court erred in rejecting the proof offered by the defendants, tending to show that the sale and purchase of the land was brought about for the purpose of defrauding the creditors of Jonathan Steele, and was intended to delay and hinder them in the collection of their debts. All the authorities agree, that a deed procured or obtained with the view or intent to delay, hinder or defraud creditors is absolutely void against those who are intended to be injured by it. That the deed purports to be made by a sheriff in pursuance of a sale under execution cannot impart to it vitality, or enable the fraudulent grantee to consumate his illegal purpose. Whether the deed be direct from the fraudulent grantor to the fraudulent grantee, or whether it be procured by means of a sale under an execution, when once the fraud is established, it is null and void, and can form no impediment to creditors in subjecting the land to the payment of their debts.—Carter v. Castleberry, 5 Ala. 277, and cases there cited; Duncan & wife v. Forsythe, 3 Dana, 229. The court should have admitted the evidence tending to show that the deed obtained at the sheriff's sale was fraudulent, and was intended to hinder and delay the creditors of Jonathan Steele, and should also have admitted the evidence, tending to show that the deed from Badger to the plaintiff was without consideration, and that he had notice of the fraud, for if he is not a purchaser for a valuable consideration and without notice of the fraudulent design intended to be consummated by procuring the deed by means of the sale under the execution, then he is affected with the

fraud, and occupies no higher ground than the purchasers at the sheriff's sale would were they the plaintiffs. This error must reverse the judgment, and as the question whether Badger, the immediate grantor of the plaintiff, was a competent witness to prove the execution of the deed from himself to the plaintiff, can be avoided upon another trial, we do not deem it necessary to examine it.

Let the judgment be reversed, and the cause remanded.