[Lewis, Adm'r v. Watson.]

# Lewis, Adm'r *v.* Watson.

*Statutory Action of Ejectment.*

| 98 | 479 |
| 121 | 644 |
| 122 | 393 |
| 122 | 394 |
| 98 | 479 |
| 125 | 541 |
| 98 | 479 |
| 126 | 392 |
| 98 | 479 |
| 143 | 233 |

1. *Estoppel.*—A defendant in ejectment who claims under the title derived from the plaintiff, who has recognized plaintiff's former title by purchase at sheriff's sale, and claims to hold adversely under such purchase, is estopped from denying plaintiff's said original title.

2. *Executing deed by hand of another in presence of grantor.*—Where the signature of the grantor is affixed to the deed by another in the presence, and at the request of the grantor, the deed is as binding as if he had personally affixed his signature.

3. *Delivery of sheriff's deed; what constitutes.*—In the absence of a contrary intention, the delivery of a sheriff's deed to the recording officer for record, constitutes a delivery of the deed to the grantee.

4. *Same.* The fact that a grantee in a sheriff's deed has possession of both the deed and the land thereby conveyed, is presumptive evidence of a due delivery of the deed.

5. *When former record in ejectment admissible.*—In ejectment against one claiming under a sheriff's deed, where plaintiff claims to have been in possession adversely for more than ten years after the date of defendant's deed, the records of a former action in ejectment between the parties, by which defendant was placed in possession under such deed, are admissible to show the date of his possession.

APPEAL from Covington Circuit Court.

Tried before the Hon. JOHN P. HUBBARD.

Statutory ejectment by Ezekiel Watson against B. H. Lewis, as administrator of the estate of Alfred Holley, deceased. Defendant pleaded the general issue, and adverse possession for ten years. The plaintiff bases his right to recover upon a purchase of the lot in controversy from one John B. Dixon, in 1866, and contended that he occupied this lot under that purchase, continuously, until 1887 or 1888, when the defendant's intestate took violent possession of the lot. The defendant bases his right and possession under a sheriff's deed, executed on May 3, 1875, at which time the lot in controversy was sold under an execution issued on a judgment recovered against Ezekiel Watson. The defendant introduced much testimony tending to show that he had been in possession of said lot from the time of his purchase up to the institution of this suit, on June 9, 1890, with the exception of a short time, when Ezekiel Watson entered upon the lot clandestinely. It was also shown by the testimony for the defendant that he had recovered judgment in an action of ejectment against said Watson, in 1880. Upon the de-

fendant's offering to introduce in evidence a copy of said
judgment, the plaintiff objected. The court sustained the
objection, and the defendant duly excepted. There were
many exceptions reserved to the rulings of the court upon
the evidence, and also to the giving and refusal to give cer-
tain charges, but the opinion of the court renders it unnec-
essary to notice them in detail.

JOHN GAMBLE, for appellant.

J. W. POSEY, for appellee.

McCLELLAN, J.—This is a statutory action for the re-
covery of a certain lot of land in the town of Andalusia.
Watson is plaintiff and Lewis, as administrator of one Hol-
ley, deceased, is defendant. Plaintiff derives title from one
Dixon by deed appearing to have been executed in 1866.
Defendant claims title through Watson, under a sale and
conveyance by the sheriff to his intestate in 1875, made in
satisfaction of certain judgments against Watson, and also
by virtue of an adverse possession on the part of the intes-
tate and himself subsequent to said sale and conveyance.

1. Some rulings were made on the trial in respect of Wat-
son's title to the land prior to the sheriff's sale and convey-
ance of it as his property to Holley, and upon testimony in
relation thereto. These are of no importance in the case;
and, whether erroneous or not in the abstract, need not be
considered, since the defendant, claiming as he does under
that title, and having recognized its validity by purchasing
at the sheriff's sale, and now further recognizing it by a re-
liance upon the acquisition of it through that sale and upon
adverse possession since that time under the color of title
with which at least he was invested by the conveyance then
made by the sheriff, is not in a position to impeach Watson's
original title.—*Ware v. Dewberry*, 84 Ala. 568 ; *Houston v.
Farris*, 71 Ala. 570 ; *Tenn. & Coosa River R. R. Co. v. East
Ala. R'wy Co.*, 75 Ala. 516, 525.

2. The evidence as to the execution of the deed by the
sheriff to Holley was that of the probate judge of the county,
and as follows : "That J. A. Thompson, the sheriff, could
not write his name, and that he (the witness) frequently wrote
in the sheriff's office for said Thompson ; that he endorsed
the levies on the execution here in evidence, and wrote the
deed of Thompson as sheriff to Alfred Holley, dated May
3d, 1875 ; that said deed and endorsements of said levies are
in his hand writing ; that said J. A. Thompson was present

when said deed was written; that it was written in the sheriff's office, at Thompson's instance and under his direction; that after the deed was written Thompson told him to sign his name as sheriff to the deed, which he did, and then as judge of probate took Thompson's acknowledgment to the deed and carried it into the probate office, and afterwards recorded it,   ·   ·   ·   · and that some one came and got the deed from the probate office after it was recorded, but don't now remember who it was."

It is not entirely clear on this testimony that Thompson was actually and immediately present when his name was subscribed to the deed by Fletcher by his direction, but manifestly there was room for an inference to be drawn to that effect by the jury. If he was so present, as the jury might have found, the subscription to the instrument was as efficacious as had he been able to write his name, and with his own hand had written it, or, he being unable to write his name, as if he had made his mark, and the words "his mark" had been written against it, and the signature thus made attested by two witnesses. This on the principle that where the grantor is present and authorizes another, either expressly or impliedly, to sign his name to the deed it then becomes his deed and is as binding upon him to all intents and purposes as if he had personally affixed his signature. The reason for the doctrine is thus stated by Shaw, C. J.: "The name being written by another hand, in the presence of the grantor, and at her request, is her act. The disposing capacity, the act of mind, which are the essential and efficient ingredients of the deed, are hers, and she merely uses the hand of another, through incapacity or weakness, instead of her own to do the physical act of making a written signature. To hold otherwise would be to decide that a person having a full mind and clear capacity, but through physical inability incapable of making a mark, could never make a conveyance or execute a deed."—*Gardner v. Gardner,* 5 Cush. 483; 1 Devlin on Deeds, §§ 232, 233; *Kime v. Brooks,* 9 Ired. 218; *Frost v. Deering,* 21 Me. 156; *Videau v. Griffin,* 21 Cal. 390; Me. Rev. Stat. (1857), p. 56; *Lovejoy v. Richardson,* 68 Me. 386; *Bird v. Decker,* 64 Me. 551.

3. And it would seem that if the signing by Fletcher under the direction and in the immediate presence of Thompson was not in itself efficacious, the subsequent acknowledgment of the latter, as shown on the deed, would be a sufficient recognition and adoption of the signature as his own.—*Bartlett v. Drake,* 100 Mass. 174.

4. Certain it is that this acknowledgment relieves the deed

31–98.

from any infirmity which might otherwise have affected it on account of the signature not being attested by witnesses. 1 Brick. Dig. p. 530, § 18 *et seq.*; 3 Brick. Dig. p. 298, § 18.

5. As we have seen, Fletcher, the probate judge, took the deed, after it was signed and acknowledged, for the purpose of recording it in his office. This, nothing appearing to the contrary, may well be considered as a delivery to him by the grantor for that purpose, and so considered, "there being no evidence to weaken the force of these facts," this constituted sufficient proof of delivery to the grantee.—*Elsberry v. Boykin,* 56 Ala 336; *Alexander v. Alexander,* 71 Ala. 295; *Sheffield Land, Iron & Coal Co. v. Neill,* 87 Ala. 158.

6. And, moreover, at the time of the trial below, this deed was in the possession of the personal representative of the grantee who in that capacity had also the possession of the land in controversy, and was defendant to this action for its recovery. The presumption from this fact alone, unexplained, is that the execution of the instrument had been duly perfected by a delivery of it to the grantee—*Cherry, Smith & Co. v. Herring,* 83 Ala. 458; *Simmons v. Simmons,* 78 Ala. 365.

And our conclusion, therefore, is that it is shown by the evidence in this record, that there was an efficacious delivery of the deed by the grantor, the sheriff, to the grantee, Alfred Holley.

7. It is stated in the bill of exceptions immediately following the copy of the deed, that "the Jordan lot No. 1; in the above deed was interlined in different hand write from the body of the deed." This "Jordan lot, No. 1" is the lot involved in this suit. We need only say in this connection that this statement is not borne out by a reference to the original deed, which is before us by order of the trial judge. The lot in controversy, leaving out of view the interlineation, is therein described and conveyed as "lot No. 1, east of the public square," and it clearly appears that this lot No. 1 on the east side of the public square is the Jordan lot. This would have been a sufficient description in the particular under consideration had nothing more been said; but it seems that the grantor did not think so, and for the purpose of curing what might be supposed to be an insufficient description, he interlined, the interlineation and the body of the deed being cleary *in the same hand writing,* the words, "the lot known as the Jordan lot." Manifestly, the interlineation accorded "with all the purposes and objects of the deed," the fair presumption is that it was made before the acknowledgment of execution; and the burden of repelling

[Lewis, Adm'r v. Watson.]

the presumption rested on the plaintiff.—*Sharpe v. Orme*, 61 Ala. 263.

8. The fact that Fletcher endorsed the levies under which the sale was made on the executions for the sheriff is of no consequence. Even were it essential to the validity of defendant's deed that the return should have been made by the sheriff, the facts here show an adoption and ratification by the latter of the endorsement made by Fletcher so as to make it his own; and it was his own in the first instance, if entered by Fletcher by his direction and in his presence. But the return of the levy is not essential to the validity of the sheriff's deed to the purchaser at execution sale.—2 Freeman on Execution, § 341; *Forrest v. Camp*, 16 Ala. 642; *Love v. Williams*, 5 Ala. 58; *Driver v. Spence*, 1 Ala. 540.

9. It follows from what we have said, that if the jury believed that Fletcher signed the sheriff's name to the deed we have been discussing at the instance and in the presence of the latter, as is inferable from the evidence, Holley acquired a perfect title to the land in question on May 3d, 1875, when that deed was executed. It is not pretended that there has been any conveyance of this title by Holley or his privies in estate since that time, nor is it pretended that Watson has received a conveyance of this land from any source since that time. The legal title to the lot, therefore was, at the time, and for all the purposes, of the trial in the estate of Holley, and represented in this action by the defendant Lewis, as his administrator, *unless* Watson for some period of ten years after May 3d, 1875, and prior to the institution of this suit, had been in the open, adverse, uninterrupted possession under a claim of right; and that is really, we take it, the main question in issue in the case. On that issue, it would, we think, be competent for the defendant to show by the records of the Circuit Court in a former action of ejectment between these parties that Holley recovered therein against Watson and *was put into possession* of the land under a writ of assistance in May, 1880, as going, not in bar of this action for a former recovery but, to show that at the time referred to Holley and not Watson was in possession. It would, in our opinion, also be competent for the defendant to show any admissions or statements made under oath or otherwise by the plaintiff subsequent to 1875 to the effect that the land was another's, and not his as going to show that at the time they were made he was not in possession of the lot, under a claim of ownership, and as also tending to impeach his evidence in that regard

on another trial of this cause, should it then be the same or like that on the trial which we are now reviewing.

Many rulings of the trial court on the admission of evidence and in respect of charges given and refused are out of harmony with the foregoing opinion.

What we have said will suffice for the Circuit Court's guidance on another trial without a specification here of the particulars in which error appears by this record.

Reversed and remanded.