# Glover v. Gentry and Moore, Admrs.

*Action against Administrators on a Promissory Note executed by their Intestate.*

1. *Action against administrator on note executed by his intestate; disqualification of plaintiff's wife as witness by reason of her interest in the suit.*—Where; in an action against the administrator of a decedent's estate on a note alleged to have been executed by his intestate, it is shown that, after the institution of said suit, the plaintiff traded and transferred the note sued on to his wife, and caused the case on the docket to be changed so that it stood as being brought for the use of his wife, of which change he notified defendant, but the wife testifies that, a few minutes before she was examined as a witness, she "formally recanted" such trade with her husband, without the consent of her attorney, to which recantation it is not shown her husband was a party, nor is the consideration therefor shown, the said wife is not a competent witness to testify that she saw the decedent execute the note sued on, since it is not made to sufficiently appear that she had disposed of the interest in the result of the suit she acquired by her husband's transfer of the note to her

2. *Same; when secondary evidence of what decedent's lands sold for admissible.*—Where, in an action against an administrator on a note alleged to have been executed by his intestate, the execution of said note is denied, and the person who wrote the will of the decedent testified, for the purpose of showing that the deceased owed a large amount of money, that he left out of the provisions of his will specified property,

[Glover v. Gentry and Moore, Admrs.]

estimated to be worth a certain amount, for the payment of his debts, it is competent to ask said witness, on cross-examination, whether the property so ‘omitted from the provisions of the will did not sell for an amount greatly less than its estimated valuation ; the matter inquired about being merely incidental or collateral to the subject in dispute does not fall within the rule requiring the highest and best evidence.

3. *Same; when evidence of plaintiff's attempt to borrow money admissible.*—Where, in an action against an administrator on a note, alleged to have been given by defendant's intestate for the loan of money by plaintiff, the execution of the note sued on is denied, evidence that the plaintiff, between the time of the execution of the note and the decedent's death, tried to borrow money is admissible, as tending to show plaintiff's pecuniary condition and his ability to lend money to decedent, which was a subject of legitimate inquiry.

4. *Same; evidence of decedent's pecuniary condition admissible.*—In such an action, evidence of the pecuniary condition of the decedent is admissible as tending to show whether he had occasion to borrow the money for which the note sued on is alleged to have been given.

5. *Same; opinion evidence of handwriting by witness who is not an expert.*—A witness who testifies that he is not an expert in handwriting or in ink, but that he has been 22 years in business which necessitated the handling of a great many letters, notes, checks, accounts, &c., is competent to testify as to whether certain words in a note were written in the same ink and in the same handwriting as other parts of the note were written.

6. *Action on a note; burden of proof under a plea of non est factum; when there is suspicious alteration.*—In an action on a note, a plea of *non est factum* casts on the plaintiff the burden of proving the execution of the note sued on, and when this burden is met and the execution is proved, the note becomes evidence, importing the consideration expressed therein, unless there is a suspicious alteration on its face ; and if a suspicion is raised as to a material alteration of the note, whether such alteration is apparent on inspection of the instrument, or is disclosed by extrinsic evidence, the burden is still upon the plaintiff to remove the suspicion by giving a satisfactory explanation for the alteration.

7. *Charge of court to jury; error to single out parts of the evidence.*— Charges to the jury, which single out and lay stress on particular parts of the evidence, to the exclusion of other portions thereof, are erroneous and should not be given.

8. *Unauthorized alteration of written instrument; effect thereof.*—The voluntary alteration of a written instrument in a material part, to the prejudice of the obligor, avoids it, unless done with the assent of the parties to be affected thereby ; and the motive with which the alteration is made does not change its effect.

9. *Charge of the court to the jury; exacting too high a decree of proof.*— In a civil case, a charge to the jury, which instructs them that if

the evidence leaves a disputed fact in doubt and uncertainty, they must find against the party who asserts the fact, exacts to high a degree of proof, and should be refused.

APPEAL from the Circuit Court of Jackson.

Tried before the Hon. JOHN B. TALLY.

This was an action brought on July 11, 1892, by the appellant, Samuel H. Glover, against the appellees, as administrators of the estate of William Moore, deceased, and counted upon a note, alleged to have been executed by the said Moore to the plaintiff. Issue was joined upon the sworn plea of *non est factum.*

The plaintiff introduced in evidence the note which was the foundation of the suit, and which showed on its face that it was executed by William Moore, on July 9, 1888, and payable one day after date, for twelve hundred and fifty dollars. Mrs. A. A. Glover, the wife of the plaintiff was introduced as a witness, and testified that she had seen the note sued on in this suit often, and identified the note introduced in evidence. She was then asked by the plaintiff the following question: ''Did you see that note signed?'' The witness answered: ''Yes sir, I did.'' To this answer the defendants objected, on the ground that said witness was a party in interest in said suit, and could not be permitted to testify to a transaction with or statements by the deceased, and moved to exclude said testimony. In connection with this motion of the defendant, the witness further testified: ''That her husband, the plaintiff, had transferred the note to her, provided witness would pay over money to plaintiff, which was owing to witness by her brother; that witness was expecting her money from her said brother; that the husband of witness failed to get either money or security from her brother on said debt so due her from her said brother, although he had made an effort to do so; that witness had formally recanted that trade that morning, a few minutes before the time witness was testifying; that the same said recantation was evidenced by writing, which said writing was offered in evidence.'' The writing thus referred to was not set out in the bill of exceptions. On cross-examination the said witness further stated that she had voluntarily recanted said trade without the advice of her attorney. Upon this evidence the court granted the motion of the defendants, and refused

to allow said witness to testify, on the ground that she was a party in interest, and to this action of the court the plaintiff duly excepted.

One of the disputed issues of fact on the trial of the case was, whether the note was for twelve hundred and fifty dollars, or fifty dollars. The testimony for the defendants tended to show that the words "twelve hundred and" had been written in the note after its execution; and there were several witnesses introduced who testified that the words "twelve hundred and" were written at a different time and with different ink from the other parts of the note. The tendencies of the testimony of these witnesses is sufficiently stated in the opinion. The testimony for the plaintiff, in referance to this disputed fact, was in direct conflict with that for the defendants, and tended to show that the note introduced in evidence was the same as it was when executed by the said William Moore, the defendants' intestate.

In reference to the transfer of the cause of action, based on the note so sued on, by the said S. H. Glover to his wife, A. A. Glover, the plaintiff as a witness testified, that his wife's brother was indebted to her in the sum of two thousand dollars, which she had been unable to collect from him, and that he agreed with his wife, that he would deliver to her the note here sued on if she would assign to him her claim against her brother, and that after such agreement, he delivered to the clerk of the court the paper, which is copied in the opinion, showing that he had transferred the cause of action to A. A. Glover, his wife.

There was much testimony introduced in behalf of the defendants, tending to show that their intestate had never borrowed the amount of money for which the note sued on was given, and that the said plaintiff was never in a position, pecuniarily, to lend the said amount of money. There were several exceptions reserved to the rulings of the court on the evidence, the facts in reference to which are sufficiently stated in the opinion.

The plaintiff requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they should find for the plaintiff for the note and interest." (2.) "The burden of proof is on the defendants to show to the

reasonable satisfaction of the jury, that the note has been changed since it was signed without the consent of the payer, Moore." (3.) "If the jury find from the evidence on examination, that the words, 'twelve hundred and, were written in the note at a different date and in a different ink, or either, still the burden is on the defendant to show that this was done after it was signed." (4.) "The law presumes that the note was signed as it now is, unless the evidence shows to the reasonable satisfaction of the jury that the note was changed after it was signed." (5.) "The jury should receive with great care the conversations which witnesses undertake to detail before them, as, for illustration, the conversation which occurred between Green Moore and plaintiff, at the grave-yard at the burial of Wm. Moore, in which said Moore says, that in said conversation, Glover, the plaintiff, said, that he supposed that the old man died pretty near even with the world, so far as he knew he owed nothing except what he owed the plaintiff, and that he (Moore) owed him (plaintiff) very little, or words to that effect, while on the other hand Glover claims that he told said Green Moore that he supposed Wm. Moore owed very little except what he owed him; as the unintentional changing or transposition of a word or phrase, might very materially alter or change the real import of the language used by the party. Such evidence is subject to much imperfection."

At the request of the defendants, the court gave to the jury the following written charges, and to the giving of each of them the plaintiff separately excepted : (1.) "The burden of proving a disputed fact rests on the party affirming its existence and claiming benefit from it. The plaintiff is bound to make good his case, so far as it is denied by defendants, by satisfactory proof." (2.) "The burden of proof is on the plaintiff, and the evidence must be sufficient to satisfy the minds of the jury; mere preponderance, unless it produces that result, is not sufficient." (3.) "If the evidence leaves the disputed fact, the execution of the note for 'twelve hundred and fifty dollars,' in doubt and uncertainty, the issue must be found in favor of the defendants." (4.) "The voluntary alteration of a note or bond or other instrument under seal, in a material part, to the prejudice of the obligor or maker, avoids it, unless done with the

assent of the parties to be affected by it, and the motive with which the alteration is made does not change its effect, and if the jury believe from the evidence that the words, 'twelve hundred and' were added or inserted into the note without the knowledge or assent of Moore, after the note was signed by him, if the jury believe he signed it, it matters not what the motive or reason for the change was, the act would vitiate the note, and the jury should find for the defendants." (5.) "The policy of the law in excluding the evidence of a party about transactions with or statements by a deceased party, whose estate is sought to be be charged, is that no one should be heard to testify of a transaction with or statement by another who had in the mean time died, and hence could not confront, and perchance contradict the evidence given against him or his estate."

There was judgment for defendants; and plaintiff appeals, and assigns as error the several rulings of the court upon the evidence and in giving and refusing the charges asked, to which exceptions were reserved.

J. E. BROWN, for appellant.—1. The court erred in sustaining defendant's objection to the question propounded by plaintiff's counsel to the witness, Mrs. A. A. Glover. Mrs. Glover had neither a pecuniary nor other kind of interest in the suit, which renderd her incompetent.—Code of 1886, § 2765; Espalla v. Richard & Sons, 94 Ala. 162; Miller v. Cannon & Co., 84 Ala. 59, and cases cited; Acts 1890–91, p. 557; Hodges v. Denny, 86 Ala. 228; Huckaba v. Abbott, 87 Ala. 410.

2. Plaintiff's objection to question propounded by defendants to the witness, as to what the land brought per acre at the administrator's sale, should have been sustained. The report of sale, the records and papers of the probate court, were the best evidence; such evidence was incompetent, irrelevant, illegal and inadmissible.—Whilden v. Mer. & Pl. Nat. Bank, 64 Ala. 1; Thrash v. Bennett, 57 Ala. 156; Cook v. Cen. R. R. & B. Co., 67 Ala. 541.

3. The question as to Moore's ability to support and maintain his family from the rents, incomes and profits derived from his lands, was not relevant to the issue, and plaintiff's objection thereto should have been sustained. Such evidence was incompetent and inadmissi-

[Glover v. Gentry and Moore, Admrs.]

ble.—*Diggs v. State*, 49 Ala. 311; *Cen. R. R. & B. Co. v. Vaughan*, 93 Ala. 209; *Street v. Nelson*, 67 Ala. 505.

4. The plaintiff's objection to the witness Kilpatrick testifying should have been sustained.—*Hames v. Brownlee*, 63 Ala. 277; *Talladega Ins. Co. v. Peacock*, 67 Ala. 253; *Cummins v. State*, 58 Ala. 387; *Smith v. State*, 55 Ala. 1; *Baker v. Trotter*, 73 Ala. 277; *Nelms v. State*, 91 Ala. 97.

5. The charges requested by the plaintiff should have been given.—*Cowen v. Eartherly Hardware Co.*, 95 Ala. 234; *Bromley v. Bir. Min. R. R. Co.*, 95 Ala. 397; *Guice v. Thornton*, 76 Ala. 466; *Barclift v. Treece*, 77 Ala. 528; *M. & E. R. R. Co. v. Perryman*, 91 Ala. 413; *Lesser v. Scholze*, 93 Ala. 338; *Harris v. Russell*, 93 Ala. 59; *Rowe v. Baber*, 93 Ala. 422.

6. The court erred in giving charges 1, 2, 4 and 5 for the defendant. Charge three exacts too high a measure of proof.—*Harris v. Russell*, 93 Ala. 59; *Rowe v. Baber*, 93 Ala. 422; *A. G. S. R. R. Co. v. Hill*, 93 Ala. 516; *Guice v. Thornton*, 76 Ala. 466; *Barclift v. Treece*, 77 Ala. 528; *M. & E. R. R. Co. v. Perryman*, 91 Ala. 413; *Lesser v. Scholze*, 93 Ala. 338.

R. C. HUNT and J. B. ASHLEY, *contra.*—1. Mrs. A. A. Glover was an incompetent witness to testify as to the execution of the note by the decedent.

2. It was unnecessary to produce the record of the administrator's sale, in order to prove what the lands of the decedent sold for.—*East v. Pace*, 57 Ala. 521; *Street v. Nelson*, 67 Ala. 504; *Winslow v. State*, 76 Ala. 42.

3. Witness Kilpatrick had been examined as to his competency as an expert, and although declaring himself not an expert, the question of his competency was addressed to the court and deemed sufficient to permit him to express an opinion. The force and value of the opinion may have been combatted by opposing evidence, but could not have been excluded from the jury.—*Gulf City Ins. Co. v. Stephens*, 51 Ala. 121.

4. The burden of proof explaining a material alteration of a written instrument is upon the one seeking benefit by it.—1 Greenl. Ev., § 564; *Barclift v. Treece*, 77 Ala. 528; *Hill v. Nelms*, 86 Ala. 442; Abbott's Trial

Ev., 407, § 32; *Simpson v. Davis,* 119 Mass. 269, 20 Amer. Rep. 324.

5. The provisions of section 2770 of the Code, casts the burden of proof on the plaintiff; and the burden of proof remains on the plaintiff to show, on the whole evidence, that the note declared on was the note of the defendant.—Abbott's Trial Ev., 407, § 32; *Simpson v. Davis,* 119 Mass. 269; *Jarrell v. Lillie,* 40 Ala. 271; *Vincent v. Rogers,* 30 Ala. 471.

6. The charges requested by the defendant were properly given.—*Lehman v. McQueen,* 65 Ala. 570; *McWilliams v. Phillips,* 71 Ala. 80; *Shulman v. Brantley,* 50 Ala. 81; *Acklen v. Hickman,* 60 Ala. 568; *Life Asso. v. Neville,* 72 Ala. 517; *Glover v. Robbins,* 49 Ala. 219; *Dismukes v. Tolson,* 67 Ala. 386; *Boykin v. Smith,* 65 Ala. 294.

HARALSON, J.—1. If the note alleged to have been executed by the deceased, Wm. Moore, to the appellant, the plaintiff below, was never transferred by him to his wife, Mrs. A. A. Glover, she was a competent witness for her husband in the suit.—*O'Neal v. Reynolds,* 42 Ala. 198; *Davis v. Tarver,* 65 Ala. 101. If the note, however, was transferred to her by her husband, she, as well as he, comes within the spirit and policy of the statute, and was not competent to testify.—*Boykin v. Smith,* 65 Ala. 294; *Hodges v. Denny,* 86 Ala. 228; *Miller v. Cannon,* 84 Ala. 63; *Goodlett v. Kelly,* 74 Ala. 218.

The evidence of Mrs. Glover shows she had accepted a transfer of the note from her husband. Her testimony is, that her husband had transferred the note to her, if she would pay over money to him, which was owing to her by her brother, which money had not been paid as yet by her brother; and that she had a few minutes before she was testifying, "formally recanted" the trade with her husband, without the advice of her attorney. It is said the writing by which she recanted was introduced in evidence, but it does not appear in the record. It does not appear that her husband was a party to the "recantation," or was present, or on what consideration it was done, or anything else, except what has been stated.

Her husband, as was shown, after the institution of

this suit, executed and delivered to the clerk of the court, a paper stating—after naming the title of this cause—that, "I, S. H. Glover, plaintiff in said cause, do hereby transfer said cause to the use of Alethea A. Glover, this the 5th day of June, 1893." The clerk testified, that he had changed the style of the case on the docket, to the use of Mrs. Glover, on the authority of said paper; that plaintiff delivered said paper to him about two weeks before the trial, and stated that he had made an exchange of papers with his wife and desired to place this case in her hands on that debt. The plaintiff, in his examination, testified that he delivered said paper to the clerk, and served a copy of the same on the administrators of deceased; but that he had never told his wife about it, had never authorized his attorney to deliver the note to his wife, and he had told her that her brother had refused to give his note to him for what he owed her, and that she and he would consider their trade void, and he had never notified the administrators, that said trade between him and his wife had been rescinded. J. L. Gentry, one of the defendants, testified, that plaintiff in June or July, 1893, served a notice on witness, which purported to set out a transfer of the note in suit to his wife; that plaintiff stated to him that he had transferred this case to his wife and if he won it, he wanted it to go to her, and if he did not, remember that he said he had made said transfer conditionally. The other defendant, Moore, testified that plaintiff had, three or four times, informed him of the transfer by plaintiff of the note in suit to his wife, but said nothing about it being a conditional transfer, and had never notified him of any transfer to plaintiff.

This evidence tends to show that Mrs. Glover was the owner of the note, and that her alleged revocation at the trial of her agreement with her husband was a ruse to qualify her as a witness in this case. It does not look right. The trial court did not err in declining to allow her to testify, that she saw the note signed by the deceased. The evidence authorized the court to hold that the note had been transferred to Mrs. Glover, and that there had been no *bona fide* re-transfer of the same to her husband.

2. With the view of showing that the deceased owed a large amount of money, one W. C. Glover, a brother

of the plaintiff, was introduced by the plaintiff, and testified that he drew the will of deceased, who left out of it, to pay his debts, about 30 acres of land on the river, worth $65 or $70 per acre, and four hundred acres of mountain land, worth from $1 to $1.50 per acre, and about three or four hundred dollars worth of personal property. On his cross examination he was asked by defendants: "If that river land did not lack a fraction of bringing $45 per acre?" To this question the plaintiff's counsel objected, on the ground, that the record of the administrator's sale was the best evidence of what the land brought. The objection was not well taken. The evidence was merely collateral to the subject matter in dispute.—*East v. Pace*, 57 Ala.521; 3 Brick. Dig. 439, § 486.

3. There was no error in allowing the question propounded to the witness Green V. Moore: "If the plaintiff had not approached him and attempted to borrow money from him, between the time of the making of the note sued on, and the death of deceased?" The pecuniary condition of the plaintiff and his ability to lend the money to deceased, was a subject of legitimate inquiry, and his efforts to borrow money about that time, from the witness and others, tended to show his inability to lend this money to deceased. The pecuniary condition of the deceased was also pertinent, as tending to show whether he had occasion to borrow the large sum of money from plaintiff; and so, the question propounded to the witness, Polly McNeely, called for relevant evidence.

4. The question to the witness Kilpatrick, to give his best judgment whether these three words, "twelve hundred and" were written in the same ink that the other part of the note was written in, was objected to because the witness testified, "he was not an expert, and not an expert in ink." He testified that for 22 years he had been in the timber business, which necessitated the handling of a great many letters, notes, checks, drafts, accounts, &c., and showed qualifications rendering him competent to answer the question propounded, and there was no error in allowing him to answer it.— *Vinton v. Peck*, 14 Mich. 287.

The other exceptions to the rulings of the court on the introdction of evidence made the basis of exceptions 8, 9 and 10, are without merit.

5. W. D. Land, for the defendants, testified, that the words "twelve hundred and," in the note in the suit appeared to be written in a different hand from the remainder of the note, and in different ink.

F. J. Kilpatrick testified, that the words "twelve hundred and," differed from the remainder of the note, and he considered these three words written with different ink, or else it was just possible that the pen might have been clogged at that certain portion of the writing, which will often make a word appear darker or of a different ink; that the writing appeared to be more distinct in said words than any other.

C. E. Kyle testified, "that the note looked like it had been given originally for fifty dollars, and the words, 'twelve hundred and,' had been added, and there seemed to be a difference in handwriting and the ink of said words, from the remainder of the note."

E. H. Caldwell stated that the words "twelve hundred and," were unnecessarily crowded, and that there were no sixteen letters in the document that occupied so small a space as these words did.

W. F. Coffey, J. D. Snodgrass, W. L. Moody and Thomas D. Stearnes testified to substantially the same thing as was deposed to by the foregoing witnesses.

The plea in the case was *non est factum* simply, and it cast on the plaintiff the burden of proving the execution of said note. When this proof is made, the note becomes evidence and imports the consideration expressed, unless there is a suspicious alteration on its face, when the *onus* is on the plaintiff to explain it. The rule as gathered from the authorities on the subject is stated to be, that where any suspicion is raised as to the genuineness of an altered instrument, whether it be apparent on inspection, or made so by extraneous evidence, the party producing the instrument, and claiming under it, is bound to remove the suspicion by accounting for the alteration.—1 Greenl. Ev., § 564, n. 1; 3 Randolph Com. Paper, § 1784; *Barclift v. Treece*, 77 Ala. 532; *Hill v. Nelms*, 86 Ala. 446.

6. The evidence of the defendant was quite sufficient to throw grave suspicions on the note, as to whether it had been altered, even admitting the signature of the maker to be genuine.

There was no pretext for the plaintiff to ask the gen-

[South & North Alabama Railroad Co. v. Highland Avenue and Belt Railroad Co.]

eral charge. The 2d, 3d and 4th requested by him misplaced the burden of proof, and were properly refused, and the 5th singled out and laid stress on a particular part of the evidence, was argumentative and misleading.

7. Charges 1, 2, 4 and 5 requested and given for the defendants were in accord with repeated decisions of this court.—*Lehman v. McQueen*, 65 Ala. 570; *McWilliams v. Phillips*, 71 Ala. 80; *Life Asso. of Am. v. Neville*, 72 Ala. 517, *Jonas v. Field*, 83 Ala. 445; *Lesser v. Scholze*, 93 Ala. 338; *Boykin v. Smith*, 65 Ala. 299 ; *A. G. L. Ins. Co. v. Sledge*, 62 Ala. 569; *Dismukes v. Tolson*, 67 Ala, 386.

8. Charge No. 3 requested by the defendant and given, as we have more than. once held, exacts too high a state of proof, and should have been refused.—*Rowe v. Baber*, 93 Ala. 422 ; *Harris v. Russell, Ib.*, 59, *A. G. S. R. R. Co. v. Hill*, 93 Ala. 516.

For the single error in giving this charge the case must be reversed and remanded.