# Alabama State Land Co. v. Thompson *et al.*

*Action of Ejectment.*

1. *Alteration of deed; altered deed admissible as evidence of title.* The unauthorized alteration by the grantee therein of a deed to land in a material part, after its execution, does not divest the title originally granted by the instrument; but the altered deed itself, continues to be a memorial of the conveyance, and may be adduced in evidence to prove such conveyance and the existence of title in the grantee.

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

This was a common law action of ejectment, brought by the appellant against the appellees. The facts of the case are sufficiently stated in the opinion. The cause was tried without the intervention of a jury. Upon the introduction of all the evidence, the court rendered judgment for the plaintiff for a part of the land sued for, and judgment was rendered for the defendant for the remainder of the land. To the rendition of this judgment the plaintiff duly excepted.

The present appeal is taken by the plaintiff, who assigns as error the ruling of the court upon the evidence to which exceptions were reserved, and the rendition of the judgment as stated above.

SMITH & LOWE, for appellant.—The deed, showing an erasure of the reservation of the minerals in the lands, should have been excluded. The general rule is, that where any suspicion is raised as to the genuineness of an altered instrument, whether it be apparent upon inspection, or is made so by extrinsic evidence, the party producing the instrument and claiming under it, is bound to remove the suspicion by accounting for the alteration.

[Alabama State Land Co. v. Thompson *et al.*]

*Smith v. United States*, 2 Wall. 219; 1 Greenl. on Ev.,
(14th Ed.), § 564. The alteration in the deed received
in evidence was to the benefit of defendant and not against
his interest. The deed being altered is void.—1 Greenl.
on Evidence, (14th Ed.), § 564.

DORTCH & MARTIN, *contra*.

McCLELLAN, J.—This is an action of ejectment. The
demise relied upon is laid in John Swan and John A. Bil-
lups, trustees, &c. The defendants in respect of a part
of the land sued for—the northwest quarter of the south-
east quarter, and the southwest quarter of the southwest
quarter of section 23, township 11, range 6, lying in
Etowah county, Alabama—claimed title through a deed
from said Swan and Billups to Shaw, bearing date March
13, 1878, and title in Swan and Billups having been
shown by plaintiff, they offered this deed in evidence.
Its introduction was objected to by the plaintiff on the
ground "that it shows on its face that it has been mu-
tilated, and upon the further ground that the clause,
'minerals reserved' in the deed has been erased by a
pen." This objection was overruled, the deed was ad-
mitted, plaintiff was cast as to this land, and reserving ex-
ceptions to this ruling and also to the judgment, which
was without jury, now appeals to this court.

The original deed from Swan and Billups to Shaw ac-
companies this record for our inspection. It is a printed
form prepared especially for conveyances by Swan and
Billups, as trustees of the Alabama and Chattanooga
railroad lands. In the body of this deed are four erasures
of printed matter. It was in the contemplation of the
draughtsman of this form that the lands would be sold
for cash in part and on credit for the balance, and that
purchasers would execute their notes for the deferred
payments. Hence in the form there is a reference to
notes executed by the purchaser. But Shaw paid cash
in full as is shown by the recitals, and that part of
the deed referring to the notes is erased. Again, the
form contemplates a sale to two or more persons, and in
it there is a reference to the purchasers, "or either of
them." Shaw was the sole purchaser in this instance,
and, therefore, the words, "or either of them," are
erased. The other two erasures are of the words "min-

erals reserved," where they occur at two places in the form. The context of the deed fully explains the first two erasures, but not so in respect of the last two. And we feel safe in concluding affirmatively that the former were made at the time the printed form was filled out and before the execution of the deed. A presumption to like effect in respect of the latter would be indulged if it were not for certain suspicious facts apparent on the face of the deed, and the conclusions to which these facts force as to the time of those erasures and by whom made. These facts and conclusions are : (1), that the erasures appear not to have been made with the same pen in the two classes of instances, the mark being much heavier upon the words ''minerals reserved,'' certainly in one place, than in either of the other instances; (2), that the erasures are not made in the same way : in erasing the reference to notes and the words "or either of them" a single line only is drawn through them, but in one instance two or three and in the other certainly three lines are drawn through the words ''minerals reserved ;'' (3), that the last erasure of the words ''minerals reserved'' appears to have been made after the blank deed had been filled out, inasmuch as the erasing lines pass *over* the top of the letter "S" in Shaw's name in the succeeding line ; (4), that in the absence of explanation we must conclude that these erasures were made after the others, and, therefore, after execution, and while the paper was in the possession of the defendants or Shaw, through whom they claim ; and, (5), the erasures being of benefit to the defendants, we must further conclude they were made by them, or Shaw, and for a fraudulent purpose. Upon the face of the deed, therefore, suspicion attaches to the erasures of the words ''minerals reserved,'' and so far from this suspicion being removed by evidence *aliunde* going to show that these erasures were made at or before execution, the only evidence adduced bearing on the question was that in behalf of the plaintiff to the effect that Shaw had made a written application for the sale of this land to him, and in it had embodied a reservation of the mineral interests, or, in other words, had proposed to buy and pay for all interests in the land except the minerals. This evidence goes strongly to support plaintiff's theory that the minerals were intended to be, and were in fact, reserved in the sale and conveyance by Swan

and Billups to Shaw; and upon it, in connection with the circumstances of suspicion apparent on the face of the deed in respect of the erasures of the words of reservation, we have no hesitation in reaching the conclusion that the lower court erred at least in respect of rendering judgment for the defendants for the land including the minerals, or rather in not entering judgment for the plaintiff for the mineral rights and interest in the realty.

Whether the Shaw deed should have been received at all in evidence is another question. That it should not have been received as evidence of defendant's title to the minerals, in the absence of sufficient explanation on his part of the erasures of the words "minerals reserved," is, of course, clear, because *prima facie*, the alterations in question being, upon the considerations to which we have adverted, of a suspicious character, evidenced by the face of the instrument, the deed, until the suspicions were removed by satisfactory explanation, was to be taken, if admissible at all, as if it contained the erased words which reserved title to the mineral deposits to the grantors. But whether the paper was evidence of Shaw's title to the land exclusive of the minerals is a more difficult question. It is a familiar law that the effect of an unauthorized alteration of an instrument in a material part by one not a stranger to it, after its execution, ordinarily is the destruction of the paper, in such sort that no rights under it can be asserted, and no rights between the parties can be proved by it.—*Sharpe v. Orme*, 61 Ala. 263; *Hill v. Nelms*, 86 Ala. 442; *Barclift v. Treece*, 77 Ala. 528; *Anderson v. Bellenger*, 87 Ala. 334; *Montgomery v. Crossthwait*, 90 Ala. 553; *Saint v. Wheeler & Wilson Manf'g Co.*, 95 Ala. 362; *Hollis v. Harris*, 96 Ala. 288. A paper so altered is no longer the paper which was signed by the party sought to be charged, and he can not be held to the obligation originally evidenced by it. This is true in respect of all executory instruments : their destruction in this way is the destruction of the rights they were intended to secure and evidence. There is, however, a well recognized distinction in this connection between this class of instruments and those which merely evidence a completed and fully executed transaction, and even between those parts of the same instrument which are as to some matters executory and as to others executed, in the sense of being

a mere memorial of an accomplished and existing fact. The distinction so· far as it has been fully recognized and established goes only to this extent : where the right is executory, and the instrument securing and evidencing it is thus altered, not only is the paper as evidence of the right destroyed, but the right itself is also destroyed ; while, on the other hand, where the instrument merely evidences an executed transaction and is a memorial of it, the rights which vested by virtue of that transaction in the person who spoliates the instrument are not thereby destroyed or divested, whatever may be the effect of the spoliation upon the memorial itself. There is some question whether the distinction goes further than this. Some courts hold, that not only is the right which has passed by such an executed instrument unaffected by this kind of destruction of the paper—as it would be unaffected by the physical obliteration of the paper—but also that the paper itself, eliminating the unauthorized alterations of it, continues to be a memorial of the right or title, and may be adduced in evidence to prove the passing and vesting of such right or title. The recognized distinction is fully illustrated in the case of an altered conveyance of realty containing covenants. The alteration does not divest the title which has passed by the instrument into the grantee, any more than the actual destruction of the paper would, but it destroys all the grantee's rights under the covenants and also, of course, the paper as evidence of the covenants. And the mooted distinction turns upon the inquiry, whether in such case the altered deed may still be adduced in evidence of the title which passed by it in its original form. The following cases hold directly or in principle that while a party does not divest himself of title to land by an unauthorized alteration in material part of the deed by which it was conveyed to him, yet he can not adduce such deed in evidence to prove such conveyance and the existence of title in himself, but must prove the conveyance by other evidence : *Babb v. Clemson*, 10 S. & R. 419 ; *Withers v. Atkinson*, 1 Watts, 236 ; *Chesley v. Frost*, 1 N. H. 145 ; *Newell v. Mayberry*, 3 Leigh, 250 ; *Bliss v. McIntyre*, 18 Vt. 466 ; *Batchelder v. White*, 80 Va. 103. To the contrary in *Doe v. Hirst*, 3 Stark, 60, an altered deed, though said by the court to be void, was admitted to show title in the party who had altered

it, because the alteration did not divest the title which had originally passed by the instrument. And the cases of *Jackson v. Gould*, 7 Wend. 364, and *Lewis v. Payn*, 8 Cowen 71, tend to support the same view. In Elphinstone's Interpretation of Deeds is this text: "There is a distinction between those deeds, or clauses of a deed, which have a continuing effect or are executory, such as a covenant to pay a sum of money, and those which produce their full effect at the instant of execution, such as a conveyance of land. No case can be found in which a deed or clause of the latter nature has been prevented from having full effect because the deed was altered after execution; so that an altered deed may be given in evidence to prove any effect produced by it at the instant of execution, or of any right which existed *aliunde* of which it is evidence. * * * * A deed which has been materially altered by a defendant may be given in evidence by him."—Page 19, citing *Pattinson v. Luckley*, L. R. 10 Ex. 330. And in *Insurance Co. v. Fitzgerald*, 16 Q. B. 440, Lord Campbell, C. J., said: "There is no ground for saying that, if a deed be altered in a material part, it is rendered void from the beginning. It ceases to have any new operation, and no action can be brought in respect of any pending obligation which would have arisen from it had it remained entire; but it may still be given in evidence to prove a right or title created by its having been executed, or to prove any collateral fact." And to the same effect are the following cases: *Davidson v. Cooper*, 11 M. & W. 778; *Lord Ward v. Lumley*, 5 H. & N. 87; and *Hutchins v. Scott*, 2 M. & W. 815, 816. This view, we conceive, is the more reasonable, and the sounder in principle. The contrary doctrine is based on the idea that a deed so altered is void *ab initio* and for all purposes. This can not be true, for such deed is confessedly valid when executed, else title could not have passed by it, and all authorities agree that title does pass and is not divested by the subsequent alteration. All authorities agree also that, notwithstanding the unauthorized erasure or interlineation, it is open to the grantee named in the paper to show by any competent evidence the fact of the passing of title into him. In other words, he may and must show that a deed conveying the land to him was executed by the grantor named in the altered paper: he must prove the execu-

tion and contents of a deed; and this, of course by the best evidence the case admits of. He can not resort to parol evidence of the contents of a paper which has not been lost or physically destroyed, but on the contrary is then in his possession and in court: the paper itself regardless of a signature to it would be the best evidence of its own contents. Nor can he resort to parol evidence to show execution of a paper which is in court, purports to be signed by the grantor, and which bears the solemn official certification required by the statute that the person whose name appears to be signed to it admitted and acknowledged that he executed the instrument: the certificate of acknowledgment would itself be the very best and only competent evidence of the fact of the execution. It is upon him to prove a deed as that deed existed the moment after its execution was completed by delivery to him. He has that deed as it then existed, duly acknowledged, in his possession. Nobody questions it. All that is shown is that certain words which were in the deed at that time have been marked across without authority. The words themselves are still visible and legible in the paper. His adversary says to him, the paper you have and offer, including the words you have attempted to erase, is my deed. He offers this paper including those words. Could there possibly be any better, or indeed any other competent, evidence of the contents of such a deed than the deed itself, or of its execution, than the statutory acknowledgment appended to it? We think not; and accordingly hold that the trial court did not err in receiving this deed in evidence to show title in the defendant to the land described in it, excepting only the minerals in said land.

To the other part of the land involved here, the defendant claimed title by adverse possession under color and claim of title for more than ten years before suit brought. We have carefully considered the evidence of such possession adduced on the trial, and upon it we concur with the trial court in finding the defense made out, and affirm the judgment in favor of plaintiff and in favor of defendant in so far as it relates to lands not mentioned in the Shaw deed.

As to the lands in suit mentioned in the Shaw deed, the judgment will be reversed and judgment will be

[Hall *et al.* v. Alabama Terminal & Improvement Co.]

here rendered in favor of the plaintiff for all the minerals in the same.

One-half of the costs of appeal in this court and the court below will be paid by each of the respective parties.

Affirmed in part, reversed and rendered in part.