# E. E. Yarbrough Turpentine Co. *v.* Taylor.

### Bill to Enjoin Boxing, Cutting, and Scraping Trees.

(Decided June 15, 1916. Rehearing denied December 30, 1916.
73 South. 458.)

1. **Alteration of Instruments; Evidence.**—Where the alteration of an instrument, and its effect upon the instrument, are apparent, the burden of explanation is upon the party to whose advantage the alteration operates, and this results as an inference of fact the weight of which is affected by the appearance of the document, the probable motive for or against the alteration, the advantage or disadvantage to the party claiming under the instrument, the ultimate issue to be determined as a question of fact upon the whole evidence.

2. **Same; Admissibility.**—An instrument containing an alteratoin is admissible in evidence with or without explanation.

3. **Same; Previous Parol Agreement; Time.**—A previous parol understanding between the lessor and lessee that a lease beneficial to the lessee would be given for a term of four years would be conclusive that an instrument altered from three years to four years and from four years to three years and seven months, was not altered by the lessee but expressed the intent of the parties, and would remove the necessity for further explanation of alteration by the lessee.

4. **Same; Presumptions.**—The general presumption of innocence is to be considered in determining whether or not a lease was altered after its execution by the party to whose advantage the alteration operated.

5. **Same; Sufficiency.**—Where the action was to cancel a lease and to restrain respondent from acting under it, the instrument having been altered from a term of three to four years, and from four years to three years and seven months, it is held under the evidence in this case that the alterations were made before the execution of the lease and that the lease as altered expressed the contract between the parties.

APPEAL from Autauga Chancery Court.

Heard before Hon. W. W. PEARSON.

Bill by Alice V. Taylor against the E. E. Yarbrough Turpentine Co., et al, to restrain them from going upon certain lands and from boxing, cutting and scraping the trees thereon for turpentine, and to cancel the lease in so far as the same purports to carry authority for any additional time to work and operate the timber after a certain date. Decree for complainant and respondents appeal. Reversed and rendered.

W. A. GUNTER and J. M. TUCKER, for appellants. GIPSON & BOOTH and EVANS & FRIEDMAN, for appellee.

[E. E. Yarbrough Turpentine Co. v. Taylor.]

SAYRE, J.— (1) There is but a single question in this case, and that is a question of fact.   It is, whether the lease in controversy between the parties was altered after its execution, as charged by complainant.   The judge of the fifteenth circuit, sitting in equity, decreed in accordance with complainant's contention.   The statute requires that this court in such cases on appeal shall give no weight to the chancellor's decision upon the facts, but shall weigh the evidence, and give such judgment as may here be deemed just.—Code, § 5955. The evidence is in irreconcilable conflict.   The instrument came from the custody of defendant, to whom it had been assigned, transferred, and set over by the lessees therein named.   It is conceded on all hands that the printed form of lease used in its preparation had been changed in other respects by erasures and interlineations before execution and delivery; but the particular alteration in dispute was material, and it operated to the advantage of defendant.   It seems, then, from some cases in this state, that the burden of explaining the change rested upon defendant.—Hill v. Nelms, 86 Ala. 442, 5 South. 796; Alabama State Land Co. v. Thompson, 104 Ala. 570, 16 South. 440; s. c., 53 Am. St. Rep. 80.   However, BRICKELL, C. J., said in Ward v. Cheney, 117 Ala. 238, 22 South. 996, which was an action at law, that: "If [alterations, erasures, or interlineations, are] apparent on the face of the deed, and nothing appears to the contrary, the presumption is that they were made contemporaneously with the execution of the instrument.   But if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing—it leaves the question of the time, the agency, and the intent with which they were made, as matter of fact to be determined by the jury"—citing 1 Green. Ev. § 564; 1 Whart. Ev. § 629.

(2) The cases everywhere are in confusion on this general subject; ours, perhaps, not less so than the rest.   We think, however, that in cases where the alteration and its effect upon the instrument are apparent, as here, this rule may be gathered: That the burden of explanation results, not as a presumption of law, for with or without explanation the document is admissible in evidence, but as an interference of fact, the weight of which is affected by the appearance of the document, the probable or possible motive for or against alteration, the advantage or disadvantage to the party claiming under it, and such like considerations, the ultimate issue to be determined as a question of fact

upon the whole evidence.—*Burgess v. Blake,* 128 Ala. 105, 28 South. 963. See, also, elaborate note to the same case reported in 86 Am. St. Rep. at page 78, et seq.

From the opinion of the judge below we get the very definite impression that the location of the burden of explanation was allowed to determine the result in favor of complainant. That rule of decision is safe enough in cases where there is a definite burden of proof; at any rate, it is the only available rule where the probabilities are so evenly·balanced as to exclude a more satisfactory basis of judgment. But here the face of the instrument, the original of which we have before us, is to be considered with a view to determining what degree of suspicion should be attached to it, and the testimony, offered on either side as tending to show the purposes of the parties and the circumstances in which the documentary evidence of their agreement was prepared, must be brought to the test of that likeness to truth which our common knowledge, observation, and experience of human nature warns us to cautiously seek out in dealing with every contested issue of fact in which the interests and feelings of witnesses may be involved.

The instrument in question, a lease of pine land for turpentining, was executed on the 3d of March, 1911. Six months later, but long before any dispute arose as to the terms of the lease, it was assigned, transferred, and set over by the lessees to the defendant in this cause. The witnesses present and taking part in its preparation, the only witnesses in fact from whom we would naturally expect any definite recollection of its terms after so long a time, are all persons of good repute in the communities where they live and are known, as numerous other witnesses have testified, and it is hard to bring our mind to the conclusion that any of them have intentionally misrepresented the facts. We do not impute wrong to any of them. We deal with the case presented by the record, and its nature is such that a finding that some of the most material witnesses to the transaction in question are in error is inevitable; and if the lessees, the Carters, have misstated the substantial facts, then it must follow that they have added deliberate perjury to their crime of forgery—a matter it is not in the human nature of any but the habitual criminal to forget.

(3) The instrument in dispute witnesses a lease from complainant to the Billingsley Turpentine Company, a corporation or

partnership in which the Carters, witnesses for defendant, were interested. Present and taking part in its preparation were the Carters, acting for the company, and G. W. and L. C. Taylor, husband and son, respectively, of complainant, whom they represented. A printed form, containing blank spaces for a description of the property, names of the parties, amounts, etc., was used. This form contemplated a lease for three years; but W. J. Carter, who did the writing upon the request and under the supervision of the Taylors, testifies that while he used forms furnished to him by the Naval Stores people, all the leases taken by the Billingsley Company were for four years, with one exception, and in that case one Stewart, who was also interested in the company, by mistake took a lease for three years. As we have noted above, the witnesses are agreed that the form was changed in several particulars to express the exact purposes of the parties. The following words, descriptive of the term of the lease, occur in the printed form: "For the full term of three years from the date of cutting the boxes on any part of described tract." Lines were drawn through the words "cutting" and "boxes" in this part of the form, and immediately above them respectively were interlined the words "hanging" and "cups." These changes appear to have been for the benefit of the lessor's reversion, and it is not denied that they were made before the paper was signed and delivered. The difference between the parties arises out of the following alterations which are perfectly plain upon the face of the document: A line is drawn through the word "three" in that part of the printed form quoted above, and directly above it the word "four" is written. But a line is also drawn through the "four," and in the space between it and the interlined word "hanging" the word "three years and seven months" are written. The Taylors say that in this respect the form had not been changed when the lease was executed, that the lease was for three years. The Carters, on the other hand, say that in the first place "four" was substituted for "three" to make the document conform to an understanding previously had between the parties, and that afterwards, upon G. W. Taylor's suggestion that the sapping season for 1914 would be over in the fall, after which the lease would be of no value to the lessee, and that he would like to get the timber as soon thereafter as possible, the instrument was then and there again changed in the manner and to the effect described above. A. J. Carter testifies specifically that,

upon an occasion when he and G. W. Taylor were upon the land for the purpose of seeing what it would likely produce in the way of turpentine, he made an offer for a lease of four years upon the terms stated in the instrument, and that upon the next day Taylor said to him over the telephone that "they have (had) decided to accept your proposition," and made an appointment for the time and place of preparing the lease, in pursuance of which he and G. W. Carter were present at Taylor's store when the instrument in question was drawn up. This alleged previous understanding or agreement becomes a matter of first-rate importance in the determination of the specific issue presented by the record, for, if it had been made as Carter testifies, it would remove all occasion for further explanation by defendant of the present condition of the instrument, since, in that event, it expresses the previously agreed purposes and objects of the contracting parties. —*Lewis v. Watson,* 98 Ala. 479, 13 South. 570, 22 L. R. A. 297, 39 Am. St. Rep. 82. Carter testifies that Stewart went with him and Taylor upon the land, on that occasion, and, it seems probable, Stewart's testimony would be of considerable importance at this point; but he is not examined. However, for aught appearing, his testimony was as available to complainant as to defendant at the time the depositions were taken. Carter's testimony as to the agreement made upon the land and the conversation over the telephone is not specifically denied. The case for complainant is rested upon the flat denial that the "three" in the printed form was in anywise disturbed before the signing and delivery of the lease.

(4, 5) It is proved without dispute that in preparing the lease W. J. Carter used a fountain pen he had with him. As well as we are able to judge, all the blank spaces were filled and interlineations made with the same pen and ink and in the same handwriting. It is possible, of course, that he made the particular interlineations in dispute after delivery of the lease, and if he did that, it would be natural to expect that he would follow it up with appropriate and necessary perjury when the emergency of this course developed three years later. But no one can doubt upon looking at the paper that "four" was first interlined, and that afterwards it was canceled by a line and "three years and seven months" substituted. The last alteration was then for the benefit of complainant. In these circumstances two special considerations, in addition to the general presumption of inno-

[E. E. Yarbrough Turpentine Co. v. Taylor.]

cence, which is to be considered in this connection (Jones on Ev. § 563), weigh heavily against the inference that Carter committed the offense charged to him: In the first place it is hard to believe that a man in his position, at the very outset of a new enterprise, as was the case here, would commit the crime of forgery for the paltry and long deferred advantage to be gained by the alteration alleged, the difference between the two theories of the contract being represented by the fourth season's crop of turpentine worth, we should say upon the evidence, not more than $100. In the next place, it is highly improbable that Carter, having determined to change the instrument for an unlawful and fraudulent purpose, first changed the term of the lease to four years, and then again, as if dissatisfied with the simplicity of the job, to three years and seven months. To our mind, the face of the instrument as it now stands is incomprehensible on any rational theory of conduct save that it was made to take its present form in an effort to express the true contract between the parties.—*Lewis v. Watson,* 98 Ala. 479, 13 South. 570, 22 L. R. A. 297, 39 Am. St. Rep. 82.

In the opinion of the judge below it was considered that the husband and son of complainant were "in some degree corroborated by the witnesses Cherry and McCullough and the negroes Parker and Burns." The terms of this lease did not come into dispute for three years after its execution, and the depositions of these witnesses were taken about four years after the event about which they testified. These people, laborers going about their work, may have been about the place where the lease was prepared; but they had no interest in it, and if they heard any part of what was said or read, they heard it in the most casual way. It taxes credulity to believe, in the circumstances, that they treasured up in memory what they heard in this way and were able to say with the assurance of knowledge that the parties had contracted for a lease of three years rather than four or three years and seven months. Nor does it seem at all probable that the Carters, having fraudulently and criminally changed the lease, subsequently discussed the matter in the way indicated by some of these people, or that, having so discussed it, they afterwards made the change. Strange too, that after such statements had been for so long a time considered of no special significance, they should come to the knowledge of the Taylors.

As for the witness Burns, we consider that the introduction of his testimony was distinctly unfortunate for the complainant.

Upon the whole, the court is of opinion that the document in dispute is now in the condition in which it was at the time of its execution and delivery, and that, in consequence, the decree making the temporary injunction permanent should be reversed, and a decree here rendered dismissing complainant's bill.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.