(113 So. 525)
## WHITEWATER LUMBER CO. v. LANG-FORD et al. (3 Div. 787.)

Supreme Court of Alabama. May 19, 1927.

Rehearing Denied June 30, 1927.

**1. Appeal and error ⬤⇒931(1)—Supreme Court will review decree on bill in equity to reform deed heard on written depositions, without presumption in decree's favor.**

On review of a bill in equity to reform a deed, heard below on depositions in writing, the Supreme Court will review the decree without presumption in favor of the finding of the trial judge.

**2. Alteration of instruments ⬤⇒24(2)—Party offering instrument bearing suspicious material alteration must explain alteration before instrument will be received in evidence (Code 1923, § 7717).**

Under Code 1923, § 7717, which deals in general with alterations made after execution, party offering in evidence an instrument bearing such apparent alteration as to cast suspicion upon the instrument must account for the alteration before the instrument will be received.

**3. Alteration of instruments ⬤⇒24(2)—Material alteration after original was drawn, of advantage to person offering instrument who has had custody, is "suspicious alteration," requiring explanation (Code 1923, § 7717).**

A material alteration, made after the original was drawn, of advantage to the person offering the instrument in evidence who has held its custody, is such an "alteration as casts suspicion" on the instrument, requiring explanation, under Code 1923, § 7717.

**4. Alteration of instruments ⬤⇒24(2)—Presumption against claim founded on material apparent alteration of instrument is so far one of law as to require explanation before instrument may be received in evidence (Code 1923, § 7717).**

The presumption against a claim founded upon a material alteration favorable to the one offering the instrument is so far one of law as to require explanation before the instrument may be received in evidence, under Code 1923, § 7717.

**5. Alteration of instruments ⬤⇒24(2)—Statute requiring explanation of apparent material alteration in written instrument as condition of admission in evidence is founded on public policy (Code 1923, § 7717).**

Doctrine of Code 1923, § 7717, requiring explanation of an apparent material alteration in a written instrument subsequent to its execution, before it may be received in evidence, is founded, not so much on any presumption of fraud, as on public policy, which requires maintenance of the integrity of documents.

**6. Alteration of instruments ⬤⇒29—Grantee's evidence held insufficient to sustain burden of proving that manifest alteration of deed was prior to execution (Code 1923, § 7717).**

Grantee's evidence held insufficient to sustain burden of proving that manifest alteration

of timber deed, extending from six to seven years the time limited for removal of timber, was made prior to execution, under Code 1923, § 7717, requiring explanation before altered instrument may be received in evidence.

**7. Alteration of instruments ⬤⇒29—Circumstance that timber deed contained alteration when recorded held sufficient evidence alteration was made about time of execution and record.**

Circumstance that timber deed, when recorded five weeks after execution, contained alteration extending the time limited for removal of timber, held sufficient evidence that alteration was made at or near the time of execution.

**8. Alteration of instruments ⬤⇒29—That prior agreements called for instrument as originally drawn, and no consideration was given for alteration favorable to grantee, held circumstance tending to show alteration was subsequent to execution.**

That all prior agreements called for a six-year period within which grantee might remove timber under a timber deed, and no consideration was given for extension of time, held circumstance tending to show that alteration from six to seven years was made after deed's execution.

**9. Alteration of instruments ⬤⇒29—Evidence held to warrant finding that alteration of deed was made by attorney, although he did not have specific recollection.**

Evidence held to warrant finding that alteration of timber deed was made by grantee's attorney, although he did not have specific recollection of transaction.

**10. Evidence ⬤⇒471(2)—Attorney's testimony that, if he made alteration, he did so before deed's execution, held conclusion from professional habits.**

Attorney's testimony that, if he made alteration in deed, which he could not recollect, he made it before deed's execution, held mere conclusion from professional habits and honesty of purpose.

Appeal from Circuit Court, Autauga County; George F. Smoot, Judge.

Bill in equity by the Whitewater Lumber Company against Maggie E. Langford and another, to correct and reform a timber deed. From a decree denying relief, complainant appeals. Affirmed.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

Where two witnesses are equally credible, and the one testifies positively and the other negatively, the positive testimony is generally preferred. Pool v. Devers, 30 Ala. 672. Positive testimony of one credible witness to a fact is entitled to more weight than that of several others who testify negatively, or at most to collateral circumstances merely persuasive in their character. Stoddard v. Kelly, 50 Ala. 452. The general presumption of innocence is to be considered in determining

whether or not a lease was altered after its execution by the party to whose advantage the alteration operated. E. E. Yarbrough Turp. Co. v. Taylor, 198 Ala. 202, 73 So. 458.

P. E. Alexander and Gipson & Booth, of Prattville, and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellees.

The rule declared in Yarbrough Turp. Co. v. Taylor, 198 Ala. 202, 73 So. 458, has changed by statute (Code 1923, § 7717), but, applying either rule in this case, the decree should be affirmed.

BOULDIN, J. Maggie E. Langford sold and conveyed certain standing timber on her lands to the Whitewater Lumber Company; her husband, R. J. Langford, joining in the deed. The deed fixed a limited time for removal of the timber, with option to extend or renew at the expiration of the time limit upon payment of $100 per annum for such extension. The deed contained a reverter clause.

The grantee claims the time limit fixed by the deed was seven years, and before it expired, tendered the $100 required for one year's renewal or extension. The grantor refused the tender upon the ground that the time limit was six years, and had expired before the offer to renew. The bill was filed by the grantee to enforce the covenant or option to renew. From a decree for the respondents on pleading and proof, this appeal is taken.

The deed was typewritten, and in the original draft "six" years was inserted as the time limit. Thereafter "seven" was inserted with pen and ink in the same space in lieu of "six." Complainant alleges this alteration was by agreement and made before the deed was signed by the grantors. Respondents deny this, and allege the alteration was made after the execution of the deed and without the consent of the grantor.

[1] This issue presents the sole question for review. The cause was heard below upon depositions in writing, and we are required to review the decree without presumption in favor of the finding of the trial judge.

In E. E. Yarbrough Turpentine Co. v. Taylor, 198 Ala. 202, 73 So. 458, a case having several features in common with this, referring to the burden of proof, and the presumption upon which it rests, in cases of alteration of instruments, the court said:

"The cases everywhere are in confusion on this general subject; ours, perhaps, not less so than the rest. We think, however, that in cases where the alteration and its effect upon the instrument are apparent, as here, this rule may be gathered: That the burden of explanation results, not as a presumption of law, for with or without explanation the document is admissible in evidence, but as an inference of fact, the weight of which is affected by the appearance of the document, the probable or possible motive for or against alteration, the advantage or disadvantage to the party claiming under it, and such like considerations, the ultimate issue to be determined as a question of fact upon the whole evidence. Burgess v. Blake, 128 Ala. 105, 28 So. 963 [86 Am. St. Rep. 78]."

Thereafter section 7717, Code of 1923, appeared in the article on "Documentary Evidence," as follows:

"*Writing Altered, Who to Explain.*—The party producing a writing as genuine which has been altered, or appears to have been altered, after its execution, in a part material to the question in dispute, must account for the appearance or alteration. He may show that the alteration was made by another, without his concurrence, or was made with the consent of the parties affected by it, or otherwise properly or innocently made, or that the alteration did not change the meaning of the language of the instrument. If he do that, he may give the writing in evidence; but not otherwise."

[2] Without attempting to define the full effect of this section, wherein it changes or merely affirms the rule theretofore prevailing in the many contingencies which may arise, we may say in general it deals with alterations made after execution, or apparently so made. The latter portion of the section, in some clauses, deals primarily with alterations in fact made after execution. But, taken in its entirety, it is manifest that, where there is an apparent alteration of such character as to cast suspicion on the instrument, the party "must account for the appearance" before it may be offered in evidence. To that extent it modifies the rule in Yarbrough v. Taylor, supra.

[3-5] When the instrument upon inspection shows a material alteration, one made after the original was drawn, of advantage to the person offering the instrument and who has held its custody, the general rule, as now modified, casts such suspicion on the paper as requires explanation. The presumption against a claim founded upon the alteration is so far one of law as to require explanation before it may be received in evidence. The doctrine is founded, not so much upon any presumption of fraud or bad faith, as upon public policy, the importance of maintaining the integrity of documents as memorials of transactions, to minimize the risk of fraudulent alterations often difficult to meet after long lapse of time. Hill v. Nelms, 86 Ala. 442, 5 So. 796; Barclift v. Treece, 77 Ala. 528; Hart v. Sharpton, 124 Ala. 638, 27 So. 450; Montgomery v. Crossthwait, 90 Ala. 553, 8 So. 498, 12 L. R. A. 140, 24 Am. St. Rep. 832; Glover v. Gentry, 104 Ala. 222, 16 So. 38; Ala. State Land Co. v. Thompson, 104 Ala. 570, 16 So. 440, 53 Am. St. Rep. 80; 2 C. J. 1290, § 216.

In 1917 the Whitewater Lumber Company was active in acquiring timber, buying from

sundry owners approximately 30,000,000 feet stumpage.

As early as May 8, 1917, this company entered into agreement with Mrs. Langford, through her husband as the active agent, to buy the timber on the Lamar or Golson lands, estimated at about 2,000,000 feet, at $1.50 per thousand, provided she could buy the land and timber, and on May 22d advanced $500, which appears to have been used as part payment on the purchase of the lands from the Lamars. The purchase by Mrs. Langford was consummated in the summer, and the Lamar deed recorded August 11, 1917.

Meantime an option on the timber to the Whitewater Lumber Company. was extended, and the deed finally executed December 7, 1917, and recorded January 14, 1918. The original deed is sent up for inspection. The alteration, by inserting in the typewritten document the word "seven" with pen and ink, the letters being printed rather than written in ordinary form, in place of "six," in two places in the deed, is perfectly apparent, with no evidence therein of intent to conceal the fact of alteration.

[6, 7] The evidence, direct and circumstantial, on the sharp controversy touching this alteration, will be discussed as briefly as possible.

Mr. J. L. Cruikshank, former president and manager of the lumber company, gave the only direct evidence for complainant in explanation of the alteration. His evidence was, in effect, that, after the deed was drawn and before execution, it was turned over to him for examination; that it was submitted to Mr. H. E. Gipson, attorney for the company, who made this and some other changes in the deed; that the time limit in the option held by the company was six years; that witness and Bob Stewart, the representative of the company, in negotiating the purchase, saw Mr. Langford, and got an agreement to make it seven years, and it was so changed before execution. When the deed was put to record five weeks after execution, it was recorded "seven" years and not "six." This circumstance, not questioned, is sufficient evidence that the alteration was made at or near the time of execution, and not after the hazard of loss arose, years later.

[8] On the other hand, the unquestioned fact that all prior agreements, down to the drawing of the deed, called for six years, and no consideration or other special circumstance shown for an extension of time and the release of the purchaser from payment of $100 contingently to become due, is a circumstance in favor of the respondents.

[9] Considerable testimony is directed to an inquiry as to who made the alteration in the deed. In this connection two other alterations are brought into the inquiry. The original draft called for payment of $1,200 cash, two notes of $600 each, and one note for "nine hundred and fifty dollars" purchase money. The word "nine" was altered so as to read "eight." In the description of the lands one call for 50 acres by numbers, etc., was altered by interlining "known Harry Hall place." Without details, we conclude with the trial court that the evidence is fairly persuasive these changes were made by Mr. H. E. Gipson, at that time attorney for the grantee. Considering the appearance of the writing, the copies made voluntarily by Mr. Gipson for comparison, the enlarged photographs of same, the evidence of those who personally know his handwriting, as well as expert testimony, and Mr. Gipson's testimony of likeness to his writing, with his statement that at times he did make corrections by printing words with a pen, although he has no personal recollection of the transaction at all, we think he wrote the words "seven" where they appear in the deed and at the same time the other changes hereafter mentioned were made.

Turning to the testimony for respondent, Mr. Langford denies any agreement to extend the time limit from six to seven years. Mr. Stewart's testimony must be taken as decidedly corroborative of Langford's. He claims his first knowledge of any change to seven years was when the six-year limit was about to expire and preparations were being made to pay the $100 for a year's extension, the deed was examined and found to call for seven years. His further testimony is that a blotter, kept upon the desk of Mr. Cruikshank, to which Stewart looked as woods foreman to keep up with time limits and extensions, showed a time limit on this timber of six years until changed to conform to the deed near the end of the six-year period. Whether this blotter was made contemporaneous with the deed or theretofore does not appear.

The deed was drawn by Mr. P. E. Alexander, an attorney representing Mrs. Langford, whose office was on the same floor and across the hall from that of Mr. Gipson's in Prattville. His testimony is quite positive to the effect that it was drawn on data furnished by Mr. Langford and Mr. Cruikshank, was not submitted at the time to any one, but taken the same day to the home of Mr. Langford 18 miles distant, and there signed and acknowledged by the grantors; that no alterations were then made except two minor ones by him which appear on the deed; that the deed was then turned over to Mr. Cruikshank at Autaugaville. Mr. Langford fully corroborates Mr. Alexander. Mrs. Langford disclaims any agreement on her part to any change of the time limit or knowledge of any such change in the deed.

To go a little further into the other alterations mentioned, the evidence does not

seem to question that $850 rather than $950 was the correct amount for the note. Hence, this change was in keeping with the agreement, and it would seem probable was made before the deed was approved and accepted.

The form of description in the deed, covering more than a page of typewriting, proceeded by giving the numbers, then the names of tracts, and source of title. The concluding paragraph declares the true intent and purpose to convey the timber conveyed by Golson to Lamar and by Lamar to Mrs. Langford, giving date and place of record of the Lamar deed. In general, the description appears to be a copy of that in the Lamar deed.

But it is not questioned the 50-acre tract known as Harry Hall place, a distinct parcel of land owned by Mrs. Langford for some years, was included in the deal, was described by government numbers, etc., but as first written the deed would import this was a part of the Lamar land, or not intended to be included. To make the deed clear and avoid probable controversy, it was entirely in keeping with the purpose in hand to identify the Harry Hall place by name, as was done by interlineation.

All the parties agree that the money was not paid nor notes given at the time the deed was turned over to Mr. Cruikshank. None of them identify the time and place or circumstances when they got together and completed the transaction. It is but natural that minor details should pass out of memory during the six years the matter was not the subject of special attention. Mr. Gipson explains that he was, at the time, busily engaged in filling out questionnaires for soldiers, and it may be inferred the World War was much exercising the minds of all.

The controlling question is whether the instrument was signed or unsigned when first turned over to Mr. Cruikshank. Neither evidence nor the theory of the bill supports a finding that Mrs. Langford, the real grantor, consented to any alteration after she signed and acknowledged the paper.

On the issue of an agreement with Mr. Langford in which Mr. Stewart participated, it may be said Stewart was the agent of the company, looking after future operations, and would be likely to remember any agreement made with him touching the time limit.

The Langfords, having but few transactions of the kind, counting on the money to be coming in, and, it appears, taking steps

216 ALA.—33

to sell after the expiration of the six-year limit, were more likely to remember the terms agreed upon. No question of veracity or standing appears as to any of the parties.

Indulging the presumption of good faith so far as recognized under legal rules in cases of this sort, we cannot say we are reasonably satisfied the alterations were made before the instrument was signed. The circumstances under which, and at whose direction, the alteration was made by Mr. Gipson, is conjectural.

[10] If the case turned on whether Mr. Langford, after turning over the signed deed for approval, agreed to these changes, the evidence might incline us to that view. The general statement of Mr. Gipson, that, if he made the alteration, it was before signature, is a mere conclusion from professional habit and honesty of purpose. If the deed was altered, as claimed by complainant, the fact remains it was done in disregard of that care which should obtain when alterations of this class are made. Chances were taken in either event.

The question of good faith is not the prime issue in cases such as we now have before us, but the issue is whether the alteration was made at such time and in such manner as to become an effective part of the deed. Complainant's entire case turns on whether this alteration, admittedly at variance with previous understanding, and manifestly in the interest of the grantee, the custodian of the paper, was made by agreement of Mrs. Langford or some one authorized to bind her in that regard. By pleadings and proof this inquiry is limited to whether it was made at or before she signed and acknowledged the instrument. A subsequent alteration, by agreement with Mr. Langford, before the instrument was approved by counsel and accepted by the grantee, while strongly supported by the circumstances, is not the case made by the bill, nor supported by the direct testimony of either side. Neither is Mr. Langford's authority to make the change so as to bind his wife, nor her ratification of same, established. The case rests upon the contention that Mrs. Langford approved it as written into the instrument when she signed and acknowledged it. Complainant has not met the burden of proof in this regard, and must fail.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.